[No. A054760. First Dist., Div. Five. Feb. 10, 1993.]

In re the Marriage of OLGA L. AND HOWARD J. CREAM.
OLGA L. CREAM, Appellant, v.
HOWARD J. CREAM, Respondent.

**COUNSEL**

Bernard N. Wolf for Appellant.

Vincent M. Spohn and James L. McIntosh for Respondent.

OPINION

KING, J.—In this case we hold that trial courts lack authority in marital dissolution cases to order interspousal auctions of property over the objection of a party because determination of the value and division of community property is a nondelegable judicial function. For the benefit of the family law bench and bar we suggest alternatives to judicial determination which parties, by stipulation, might utilize to resolve property issues.

Olga L. Cream (now Kolbek) appeals from a dissolution judgment, challenging (1) the trial court's method of valuing and disposing of a parcel of community real property on which a community business was operated, and (2) the denial of her request for compensation for the operation of the business pending trial.

I

Olga and Harold Cream were married in 1970.[1] In 1973 they purchased real property and a business known as the Old Faithful Geyser of California. On November 9, 1987, Olga filed a petition for dissolution of marriage. In January 1988, the trial court gave her exclusive occupancy and operation of the geyser pending trial. Apparently, the parties shared the profits equally during that time. On August 3, 1989, the trial court rendered a judgment of dissolution as to status only. At a later time the issue of division of property was tried.

The property in dispute is unique, the only privately owned geyser in the United States. Each party was prepared to submit an appraisal valuing the property at $800,000, although neither appraisal was actually received in evidence. While Olga, the trial court said in a statement of decision, made "a persuasive showing that she is particularly interested in the business and that she is particularly capable of running it profitably," Howard offered "to have it awarded to him at significantly above the market value." The court stated it had "a duty, owed jointly to the parties, to maximize the assets of the community." The court felt that ignoring Howard's offer to pay more than fair market value "would not be a just result," since it would not maximize the value of community property.

Accordingly, "in exercise of its discretion in providing for a fair and equal division of the community property of the parties," and over Olga's repeated objections, the court ordered a nonbinding private auction between the

---

[1]For ease of reference, we will refer to the parties by their first names, Olga and Harold. (See *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1 [274 Cal.Rptr. 911].)

parties to dispose of the geyser. Under tentative guidelines, each party would bid for the one-half interest of the other, unconditionally except for the procurement of financing, in increments of $1,000 beginning with $400,000. If the successful bidder failed to post a 10 percent deposit within one day or to close escrow within 90 days, the property would be sold to the other party at his or her highest offer. If neither party was able to complete a sale in this manner, the geyser would be sold through a public auction or listing process.

The court denied both Olga's request for credit for her pendente lite work at the geyser and Howard's request for "prospective and retroactive" spousal support. The court reasoned, "To the extent that [Olga] may have been entitled to payment for her services, [Howard] may also have been entitled to support since he was excluded from the business." Furthermore, "depending upon the result of the auction, [Howard] will have either enough cash to support himself or a business by which to employ himself."

In a partial response to Olga's objections, the court modified the auction procedure, deleting the 10 percent deposit requirement and retaining jurisdiction to extend for good cause the escrow closing date. More importantly, the court ruled that should the high bidder fail to close escrow on time, the other party might either buy at his or her last bid or refer the matter to the court, which would then have the duty—taking into account the evidence at trial and the expressions of value shown by the parties during the auction—to fix the value of the asset and award it, or to order its public sale to a third party.

The auction took place on May 21, 1991. Olga's highest bid for Howard's one-half was $596,000; Howard's was $600,000. The court accordingly valued the geyser at $1.2 million and awarded it to Howard subject to the previously specified conditions. Olga continued to object to the auction procedure. The trial court rendered judgment on June 27, 1991.

On August 20, Howard having been unable to close escrow, Olga purchased his interest in the property for $596,000, but filed a notice of appeal contesting "the fact that she should be required to pay $596,000 instead of one-half the actual appraised value of the property and business." On August 26, Howard filed a cross-appeal which he subsequently abandoned. Escrow closed on December 18, 1991.

II

 Olga's primary contention is that the court lacked authority to order interspousal disposition of this community asset by auction. Howard maintains she has waived this issue by accepting the benefits of and/or

voluntarily complying with the judgment. (*Lee* v. *Brown* (1976) 18 Cal.3d 110, 114, 115 [132 Cal.Rptr. 649, 553 P.2d 1121].) However, the rule that voluntary acceptance of the benefits of a judgment bars appeal therefrom is subject to qualifications. (*In re Marriage of Brockman* (1987) 194 Cal.App.3d 1035, 1044 [240 Cal.Rptr. 96].) The appellant must demonstrate a "clear and unmistakable acquiescence in" the judgment, an "unconditional, voluntary, and absolute" acceptance of the fruits thereof. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 744 [131 Cal.Rptr. 873, 552 P.2d 1169].) Olga's consistent objections to the auction procedure, the resultant valuation of the geyser, and the terms of the judgment preserved the issue on appeal.

■■■ Olga contends an interspousal auction such as the one employed here cannot be ordered over the objection of a spouse and that it necessarily results in an unequal division of property contrary to the mandate of Civil Code section 4800.[2] In support of this conclusion she notes that the fair market value as established by the auction procedure in this case was 50 percent higher than the appraisals the parties were prepared to submit.

The trial court's authority to order an interspousal auction of community property generally, and to determine the value of a family business and the party to whom it is to be awarded in particular, is an issue of first impression in California. Indeed, our research has determined that the only reported decision in the United States involving this issue is *In re Marriage of Dennis* (Iowa Ct.App. 1991) 467 N.W.2d 806, in which the court rejected the use of an interspousal bidding process to establish the value of a closely held corporation in which each party owned 50 percent of the stock. Although *Dennis* is not binding authority in California, its reasoning is persuasive. The court held the trial court's use of a bidding process "avoids the judicial responsibility of valuation and is, therefore, an unacceptable methodology." (*Id.* at p. 808.) It found the process particularly inappropriate where the parties are not willing buyers and sellers, but "dissolution litigants . . . in a highly charged setting." (*Ibid.*) "Parties may be experiencing a number of emotions including depression, anger, vengeance, or stress. Furthermore, there are several mechanical difficulties and potential inequalities that may arise in this type of transaction and affect the bidding, such as: the availability of financing and other resources (i.e., access to guarantors or banking connections, etc.), the establishment of management, and the reputation of the respective spouses. In such a setting," the court concluded, "we do not believe a trial court is able to take sufficient precautions to ensure a fair value will result from a bidding process." (*Id.* at pp. 808-809.) The court acknowledged the difficulty of the trial court's task in determining value of a marital asset, especially where, as in that case, the asset was a closely held

---

[2]Unless otherwise indicated, all further statutory references are to the Civil Code.

corporation and large variations in value were presented in evidence, and noted that this is why the law provides trial courts great leeway. "Yet, the law does not provide so much 'leeway' as to condone the relinquishment of judicial duties." (*Id.* at p. 808.)[3]

We must examine California's statutory scheme to ascertain whether a trial court here nevertheless possesses the authority to order, over the objection of a party, an interspousal auction for the purpose of fixing the fair market value of community property and awarding it to a party at that value. The only applicable statutes appear to be sections 4800 and 4351.

Section 4800, subdivision (a) is the court's authority to divide the community estate. It is worth mentioning, for reasons which will become evident later in our discussion, that unlike virtually every other state, California has restricted judicial authority by requiring trial courts to divide the community estate equally between the parties, except for limited circumstances specified in later provisions of section 4800 which are inapplicable here. The parties, on the other hand, by written agreement or oral stipulation in open court, are free to divide their community estate in any fashion they wish and need not divide it equally.

In section 4351, the Legislature has specifically conferred jurisdiction upon the court in actions under the Family Law Act "to inquire into and render any judgment and make such orders as are appropriate concerning . . . the settlement of the property rights of the parties. . . ." Finally, section 4800, subdivision (f) provides that the court "may make such orders as it deems necessary to carry out the purposes of this section." Although the Family Law Act contains other provisions pertaining to the property rights of the parties, none relate to the issue of the court's authority to make the order in dispute in this case.

Our examination of the statutory scheme also requires us to consider Family Law Rules adopted as California Rules of Court since, uniquely in this field of law, the Legislature has specifically authorized the Judicial

---

[3]The factual circumstances in *Dennis* bear a startling resemblance to those present here. The marital asset at issue there was also a family business which the parties ran jointly. Each wanted to purchase the 50 percent interest of the other. The trial court determined that the business was worth more to either of the parties than the $290,000 fair market value testified to by an expert witness. Since there was some evidence that the business was worth more than the value testified to by the expert, including testimony by one of the parties, the court concluded that the fairest way to determine fair market value would be by a bidding process between the parties. The husband objected to the use of an interspousal auction, but when it proceeded by court order over his objection, he was the high bidder at $576,000 for the entire business. The court fixed $576,000 as the fair market value of the business, and awarded it to the husband, who then appealed.

Council to adopt rules superseding contrary statutes. (See *In re Marriage of McKim* (1972) 6 Cal.3d 673, 678, fn. 4 [100 Cal.Rptr. 140, 493 P.2d 868].) Only two rules are possibly applicable to the issue before us. Rule 1242 pertains to division of property and provides in part, "The court in every case shall ascertain the nature and extent of all assets and obligations subject to disposition by the court in the proceeding and shall divide such assets and obligations as provided in the Family Law Act . . . ." Rule 1249 states, "In the exercise of the court's jurisdiction pursuant to the Family Law Act, if the course of proceeding is not specifically indicated by statute or these rules, any suitable process or mode of proceeding may be adopted by the court which appears conformable to the spirit of the Family Law Act and these rules."

■ In applying these statutes and rules, trial courts possess broad discretion to determine the manner in which marital property is divided in order to accomplish an equal division. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 603 [153 Cal.Rptr. 423, 591 P.2d 911].) Likewise, as long as its determination is within the range of the evidence presented, the court possesses broad discretion to determine the value of community assets. (See *In re Marriage of Bergman* (1985) 168 Cal.App.3d 742 [214 Cal.Rptr. 661].)

One or more of the following methods of division may be used: (1) in kind, (2) asset distribution or cash out, (3) sale and division of proceeds, or (4) conversion to tenancy in common where the sale of the family home is deferred pursuant to section 4700.10. (For a detailed discussion of these methods, see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1992) ¶ 8:225 et seq.) ■ The asset distribution or cash out method involves distributing one or more community assets to one spouse and other community assets of equal value (which may include an equalizing promissory note) to the other. When, as here, this method is used, section 4800 confers upon the court the responsibility to fix the value of assets and liabilities in order to accomplish an equal division. (*In re Marriage of Micalizio* (1988) 199 Cal.App.3d 662 [245 Cal.Rptr. 673]; *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244 [105 Cal.Rptr. 483].)

■ Except for those provisions of section 4800 which specify circumstances in which the community estate need not be divided equally, which are inapplicable here, the court possesses no authority to divide the community estate between the parties other than equally, and cannot delegate its responsibility to fix the fair market value of the community estate where assets are not divided in kind. (*In re Marriage of Knickerbocker* (1974) 43 Cal.App.3d 1039, 1047-1048 [118 Cal.Rptr. 232].) This was the effect of the court-ordered interspousal auction in this case, which was therefore unauthorized by the pertinent statutes and rules.

In our view, the fair market value of a marketable asset in marital dissolution cases is the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no obligation or urgent necessity to do so, and a buyer, being ready, willing and able to buy but under no particular necessity for so doing.[4] We restrict the use of this definition to marketable assets because some marital assets are not marketable, but nonetheless may have to be valued. Obviously, the procedure ordered by the trial court in the present case does not establish fair market value as so defined because of the terms of the auction and the threat of a public sale, and most importantly because Olga's objection to the procedure clearly establishes she was not a willing buyer within the definition.

Without a stipulation of the parties, the trial court cannot abdicate its statutory responsibility to value and divide the community estate. We hold the court has no authority to order an interspousal auction of a community asset, over the objection of a party, as a substitute for the court valuing and making its award of that asset.[5]

## III

■ Nothing in this opinion should be construed as limiting in any way the court's authority under section 4800 to order an asset sold, with the proceeds divided in the proportions necessary to accomplish an equal division of the community estate. (*In re Marriage of Holmgren* (1976) 60 Cal.App.3d 869, 873 [130 Cal.Rptr. 440].) A sale is often required.[6] However, where the asset at issue is a family business which the court finds

---

[4]This definition is a modification of the definition of fair market value for condemnation cases contained in Code of Civil Procedure section 1263.320.

[5]Even if we had found the court could order an interspousal auction over a party's objection, we would have reversed because the court erred in the ground rules it set for the conduct of the auction. The fact the bidding was not binding created the possibility that Harold, knowing how much Olga wanted this asset, would keep increasing his bid until she dropped out, knowing he would not be required to purchase it for his bid price. In a marital action, where emotion often overcomes judgment, this should not be permitted. It is for this very reason that California Uniform Commercial Code section 2328 precludes the final bidder at an auction from retracting his or her bid, and Business and Professions Code section 5776, subdivision (o) precludes an auctioneer from allowing anyone to bid for the sole purpose of increasing the bid.

Additionally, the court erred in stating it would order a public sale if neither party purchased the property as a result of the auction. This statement, in the context of a family business, could be especially coercive. Olga contends that when Harold did not fulfill his bid, the court's threat of a public sale compelled her to purchase the business at her bid price, even though she believed the appraisal value was the true fair market value. This potential for coercion takes the auction result outside our definition of fair market value.

[6]An order for the sale of an asset or assets and for division of the proceeds is often the most expeditious and least expensive method of resolving disputes over property, especially items of personal property of limited value. Other alternatives available to the court include the

either party is capable of operating, and each seeks its award and can purchase the other's share, a sale to a third party should not be ordered. Although the business may be difficult to value, and it may be even more difficult to decide the spouse to whom it should be awarded where both have been operating the business and both want it and can purchase it, it will usually be an abuse of discretion not to award it to one of the spouses.

In the instant case, the spouses jointly operated this family business for over 15 years. The business could be awarded to one spouse with offsetting community or separate property assets used to cash out the other spouse. Under these circumstances, it would be an abuse of discretion to sell the business out from under both parties, simply because they could not agree upon its value or the one to whom it should be awarded. Those decisions are the court's responsibility. After all, such businesses do not simply represent an investment of capital; they are also an investment of sweat, toil, worry, and hopes. No matter how difficult the decision, the trial judge must bite the bullet, value the business and award it to one of the parties. No one ever said judging was easy.

If the court has no authority to resolve property disputes by ordering an interspousal auction over the objection of a party, does this mean auctions are a disfavored method of resolving disputes between divorcing spouses? On the contrary, auctions and other alternative methods of resolving property disputes are regularly used by innovative and knowledgeable family law lawyers, often at the suggestion of innovative and knowledgeable family law judges. For the benefit of the family law bench and bar—indeed, for the benefit of the increasing number of parties who represent themselves in marital dissolution cases—we attach as an appendix to this opinion a laundry list of alternative methods of resolving property division and valuation disputes which are frequently suggested by family law judges and lawyers, and stipulated to by parties.[7]

However useful these methods may be as a substitute for a judicial determination, absent statutory authority they can only be used by stipulation

---

court's appointment of its own expert to value the assets under Evidence Code section 730 or of a referee or special master, either by agreement of the parties or on the court's own motion. (See Code Civ. Proc., §§ 638, 639.) These alternatives can involve considerable expense and, of course, delay.

[7]Many family law judges have recommended the use of these alternatives. The leading exponent of their use in California was Riverside County Superior Court Judge Robert Garst, when he served as that court's family law judge. One of California's most innovative and successful family law judges, he used methods such as these to fairly and effectively handle a high-volume family law caseload. By urging parties to use alternative methods to resolve their own disputes, especially disputes over property, Judge Garst recognized and respected the fact that the parties should be given every opportunity to reach their own decisions. After all, judges do not possess magical powers which enable them to reach the perfect solution to

of the parties. The Legislature was wise to provide in section 4800 that the court must accept stipulations of the parties with regard to the disposition of their property. The court has no role in approving or disapproving property divisions agreed to by the parties. Except for conduct violative of section 4800.11, the parties possess the exclusive authority to agree upon the disposition of their property. The court's only role with regard to a proper stipulated disposition of marital property is to accept the stipulation and, if requested, to incorporate the disposition into the judgment.

For the most part, the methods to resolve disputes over marital property listed in the appendix can and should be utilized without any direct judicial participation. Although the judge may recommend one or more of these methods at a settlement conference or at trial, negotiation of the terms and implementation of the method chosen can be done outside the presence of the judge. It has been our experience as trial judges, as well as the experience of knowledgeable family law judges in California, that there is rarely any hesitancy on the part of divorcing spouses to agree to use one or more of these methods to resolve an impasse in the division of assets. Indeed, the parties usually greet the suggestion with enthusiasm.

These methods can be valuable tools in both ascertaining the value of community property and determining the party to whom it is awarded. Their use can avoid game-playing, discovery disputes, the expense of experts and lengthy and costly trials. The conditions under which they are used must be fair, and neither party should be disadvantaged by the method selected. The parties must be on a reasonably equal financial footing and be fully informed about the legal effect of the terms to which they are agreeing. If the process is conducted fairly, the recipient of the property at the price specified has no basis for complaint because the recipient believes the property is worth what he or she is paying for it. The other party has no basis for complaint because that party is receiving more for the property than he or she thought it was worth, since he or she was unwilling to pay that much to the other party to obtain the property.

The items most typically disposed of by the use of one of these methods are the proverbial "pots and pans." Indeed, furniture, furnishings and other personal property are regularly disposed of by one of these methods. The alternative may be a court-ordered garage sale. Disputes over appraised items where the appraised value is accepted by the parties as correct, such as wine collections, works of art, etc., are often resolved by one of these methods. These methods are especially useful when, as is frequently the

---

every dispute. Their role is to make the parties' decisions for them only if the parties cannot decide for themselves.

case, each party wants the same item or items and there is no good reason for the court to award an item to one spouse rather than the other. As in the instant case, these methods can also be used to determine both the value and the disposition of a community business, although this may be appropriate only where each spouse is capable of operating the business. Even where a family business is not operated by both spouses, one of these methods may be utilized when each spouse wants the business, if the business is readily saleable or can be operated by a capable manager.

Experienced family judges and lawyers know that the best resolution of marital disputes is that reached by agreement of the parties themselves. The alternatives in the appendix are vehicles to assist disputing spouses in reaching agreement on how to dispose of their property. Indeed, they represent self-empowerment vehicles to assist the parties in making their own decisions, rather than having a decision imposed upon them by the court after a lengthy and expensive trial. In some cases the cost of the trial could exceed the value of the property in dispute. We encourage the family law bench and bar to recommend that parties in marital dissolution actions consider making use of whatever alternatives to judicial resolution of property disputes can be agreed upon by the parties.

IV

By analogy with *In re Marriage of Epstein* (1979) 24 Cal.3d 76 [154 Cal.Rptr. 413, 592 P.2d 1165] (reimbursement for postseparation expenditure of separate property funds to preserve and maintain family residence), Olga also contends she was entitled to a reasonable salary for her post-separation work at the Geyser. She alleges the trial court erred in finding that her reimbursement claim was cancelled out by Howard's support claim for the same period. This point was expressly placed before the court in Howard's trial brief and argued in Olga's posttrial brief.[8] We find no error. The fact that Howard was receiving one-half the profits from the geyser "just like Wife" is not dispositive of his claim since, unlike Wife, he was prohibited by court order from working and earning a salary there.

V

Since Olga has paid the amount she bid for the property and has been operating the business, we affirm the judgment awarding her the property. However, we remand the case to the trial court for the purpose of fixing the fair market value of the property as of the date the parties made their bids. If the price Olga paid exceeded the fair market value of one-half the property

---

[8]The court also had before it the parties' income and expense declarations and tax returns.

as of that date, Harold shall be ordered to pay her the difference, plus interest from the date of her payment. Olga shall recover her costs on appeal. Any request for attorney fees on appeal shall be directed to the trial court.

Peterson, P. J., and Haning, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 13, 1993, Panelli, J., and Baxter, J., were of the opinion that the petition should be granted.

APPENDIX
METHODS OF DIVISION OF COMMUNITY PROPERTY
OTHER THAN BY JUDICIAL DECISION

1. IN-KIND DIVISION: Each party takes one-half of fungible assets such as bank accounts, stock in a corporation, etc.

2. TRADE-OFF DIVISION: The parties stipulate to settle their property disputes, without regard to value, by agreeing one will take certain items of property, e.g., the furniture, and the other will take other items, e.g., the car.

3. PIECE-OF-CAKE DIVISION: This method gets its name from the common situation where two children have a piece of cake to be cut in half. To avoid the argument over who gets the "bigger" half, it is agreed that one will cut the cake and the other gets to choose which piece he or she will receive. In the marital property context, one party makes up two lists of the property in question, e.g., furniture, personal property, etc., which he or she believes are equal, and the other party chooses which list of items she or he will take. In using this or any other method, it is important not to break up sets, e.g., a dining room set, a set of dishes, matching art works, etc. The piece-of-cake method is particularly useful for dividing furniture and furnishing which usually have a real value to the parties far in excess of their fair market value as used furniture. This method is also useful in short-term marriages where the dispute is over the division of wedding gifts received by the parties.

4. ONE VALUES, THE OTHER CHOOSES: In this method, one party places a value on each item of community property in dispute and the other party chooses those items he or she will take at the stated value up to one-half the total value. Alternatively, the parties may agree that the party choosing may select any, all or none of the items, with any items not chosen going at the stated value to the one who set the value. An equalization payment can be required. In dividing furniture and furnishings using this or one of the other methods listed, an alternative to piece-by-piece choice is to list furniture and furnishings room-by-room and have alternate choices by room.

5. YOU TAKE IT OR I WILL TAKE IT: In this method one party places a value on an asset at which that party is willing to let the other party be awarded the asset, or else the former will be awarded the asset at that value.

6. APPRAISAL AND ALTERNATE SELECTION: An appraiser is selected by stipulation to value each of the items in question. The parties then choose items alternately until all items are taken. The one to make the first choice can be designated by the flip of a coin. Another approach is to let one party go first and the other party then gets two selections, after which choices are made alternatively. As mentioned in No. 3 above, it is usually preferable to agree that sets not be broken up. It might be agreed that if a party takes a set it counts as that many choices, e.g., a dining room table and four matching chairs counts as five choices, and the other party then makes the next five choices.

7. SALE: The parties agree that the items in question be sold at a public sale or to a particular buyer with the proceeds divided equally, or in whatever other proportion is necessary to accomplish a satisfactory or equal division, considering the other marital assets or obligations each is receiving. For modest furniture or furnishings, the sale may be a garage sale, since this might be what the court would order.

8. SEALED BID: Each of the parties submits a sealed bid on each item of property in dispute, using the same list. The bids are opened simultaneously and the one bidding the highest amount for an item gets that item valued at the figure he or she bid, with an equalizing payment to be made, if necessary. This method can also be used for disposition of the family home, other real property and a family business which both parties have operated, where each seeks to have it awarded to him or her.

9. INTERSPOUSAL AUCTION: This is a straight auction between the parties, usually with an agreed minimum incremental increase over the last bid being required. The high bidder gets the asset at the amount of his or her bid with an equalizing payment being made, if necessary. To the extent a major asset is involved such as a family business or real estate, the stipulation might provide that each of the parties have an advisor present during the bidding.

10. ARBITRATION: The valuation and division of the community property in question could be determined by an arbitrator selected by the parties. The parties should understand that the arbitrator is not required to follow the law, and his or her decision, for all practical purposes, is final and not subject to appeal. Because arbitration usually takes much less time than a court trial, the parties might consider stipulating with the consent of the judge, that the judge hear the case as an arbitrator.

11. MEDIATION: Mediation is greatly underutilized in family law cases. It can be a very effective and satisfying way for the parties to reach agreement on the value and division of their marital property.

12. REAL PROPERTY: If both parties want community real property, one of the foregoing methods of resolution can be used. If neither wants it, it can be listed for sale with a broker stipulated to by the parties, at a listing price recommended by the broker. If one wants the property but the other feels he or she is offering too little, the latter can list it for sale with a broker of his or her choosing. If the property does not sell within a specified period of time, the listing price will be periodically reduced until it reaches the figure where the net proceeds would be equal to what the other party offered. The property then goes to the offering party for the amount of the offer.

13. COMBINATION: Where more than one marital asset is in dispute, one of the foregoing methods might be used for one asset, while one or more other methods might be used for other assets.