Opinion
HOCH, J.
In this marital dissolution case, appellant Clark Woolsey persuaded respondent Anna Woolsey to participate in a church-sponsored reconciliation session that turned into a mediation[1] of issues regarding division of property, support, and custody of their two children. The mediation resulted in a marital settlement agreement that divided the community property, permanently waived Anna’s[2] entitlement to spousal support, and presented a parenting plan in which the parties’ children would remain in Anna’s primary care. The agreement declared that the parties had disclosed all of their financial matters during the mediation.
Anna moved to enforce the agreement under Code of Civil Procedure section 664.6. Clark apparently changed his mind about the terms of the agreement and opposed entry of judgment. After a trial, the court entered judgment on the agreement. The court also made custody and visitation determinations in the same judgment.
Clark appeals, contending (1) the marital settlement agreement is unenforceable for lack of timely financial disclosures under Family Code sections 2104 and 2105,[3] (2) the parties’ noncompliance with the Superior Court of Placer County, Local Rules, rule 30.7 (rule 30.7) requires reversal of the judgment, (3) his due process rights were violated because he was prevented from fully presenting his evidence at trial, (4) to the extent the marital settlement agreement was enforceable, it required the parties to engage in *888 further mediation or arbitration, (5) undue influence on Clark during the mediation renders the agreement unenforceable, (6) the trial court did not properly address the issue of deceit, (7) the custody order was not made in the best interests of the parties’ children, and (8) the trial court failed to properly respond to Clark’s objections to the tentative ruling.
We conclude the trial court properly entered judgment on the marital settlement agreement. In response to Clark’s contentions, we conclude (1) parties who agree to settle their disputes by private mediation may also agree to make financial disclosures that do not meet the technical procedural requirements of sections 2104 and 2105; (2) rule 30.7 is invalid insofar as it imposes additional requirements on a mediated settlement agreement beyond those specified by statute; (3) the record reveals Clark received a full and fair trial; (4) Clark forfeited the right to further mediation or arbitration of the issues; (5) the mediation confidentiality imposed by Evidence Code section 1119 undermines Clark’s arguments regarding undue influence and there is no presumption of undue influence in a marital settlement agreement reached as the result of mediation; (6) Clark’s failure to provide any legal authority that supports his deceit argument forfeits the issue on appeal; (7) Clark’s challenges to the custody and visitation terms in the judgment do not establish an abuse of discretion by the trial court; and (8) the trial court’s statement of decision is adequate in addressing the issues presented for trial. Accordingly, we affirm the judgment.
FACTUAL AND PROCEDURAL HISTORY

Marriage and Separation

The parties married in September 2001. They had two children, who were bom in California: Grant, who was bom in July 2002, and Claire, who was bom in February 2004. The parties lived in California until they moved to Missouri in December 2007. Clark and Anna separated on April 30 or May 1, 2009. Anna and the children moved back to California, where Anna had lived her entire fife except for the 18 months she resided in Missouri.
In July 2009, Anna filed a petition for legal separation.

Mediation Results in a Marital Settlement Agreement

In August 2009, Clark hoped to achieve reconciliation with Anna and urged her to participate in mediation provided by Live at Peace Ministries. Anna was skeptical but agreed to participate.
Mediation began on August 20, 2009, but no agreement to' reconcile was reached during the first two days. Thus, the focus of the mediation for the *889 next two days was on division of community property, custody, and other issues related to dissolution of marriage. The mediation was successful and the parties personally signed a marital settlement agreement on August 23, 2009.[4] The agreement resolved issues of custody, division of community property, and set up a plan for communication between Clark and Anna.
On the same day the parties signed the marital settlement agreement, Clark was served with Anna’s petition for legal separation.
In September 2009, Anna filed her preliminary and final declaration of disclosure and income and expense declaration. A month later, the parties entered a stipulation regarding custody and visitation in which they agreed Anna would have custody of the children “at all times” except for the period from October 30 to November 1, 2009, and the Thanksgiving holiday period of November 21 to 29, 2009. Anna was entitled to keep the children during the entire Christmas holiday.
In January 2010, Anna filed an amended petition to seek dissolution of marriage. That same month, Clark served a preliminary declaration of disclosure. He never filed a final disclosure.

Trial on Enforceability of the Marital Settlement Agreement and on Issues of Custody and Visitation

In February 2010, Anna moved to enter judgment to enforce the marital settlement agreement under Code of Civil Procedure section 664.6. Clark opposed entry of judgment on the agreement, and a one-day trial occurred on August 16, 2010. During trial Clark represented himself while Anna had legal counsel. Clark cross-examined Anna and examined Jack D. Love, M.A., M.F.T., the child custody mediator. Although Clark testified on his own behalf, he did not call any witnesses except for Love. During his testimony, Clark admitted he was not aware of any marital asset that was not discussed during the August 2009 mediation.
At the end of his testimony, Clark stated: “That’s it.” Clark did not make any offer of proof regarding additional evidence he wanted to introduce. *890 Instead, he agreed to a posttrial briefing schedule. Consistent with that schedule, Clark filed a posttrial brief. In his brief, Clark did not request that the court take additional evidence, nor did he object that he had not received a full trial on the contested issues.
The trial court granted Anna’s motion to enter judgment on the marital settlement agreement under Code of Civil Procedure section 664.6. The court also awarded joint legal and physical custody, with a parenting schedule that confirmed Anna as the primary caregiver for the children.
Clark timely appealed from the judgment.
DISCUSSION
I

Financial Disclosures

Clark contends the marital settlement agreement must be set aside because the parties failed to make the financial disclosures in compliance with sections 2104 and 2105. We reject the contention.
A.

Family Code Disclosure Requirements

Under the Family Code, “parties to marital dissolution proceedings have an affirmative duty to exchange both a preliminary and a final declaration of disclosure, detailing all of their assets and liabilities, prior to judgment being entered.” (In re Marriage of McLaughlin (2000) 82 Cal.App.4th 327, 331 [98 Cal.Rptr.2d 136].)
To this end, the version of section 2104 in effect at the time judgment was entered governed preliminary disclosures by requiring that, “[e]xcept by court order for good cause, as provided in Section 2107, after or concurrently with service of the petition for dissolution or nullity of marriage or legal separation of the parties, each party shall serve on the other party a preliminary declaration of disclosure, executed under penalty of perjury on a form prescribed by the Judicial Council.” (Former § 2104, subd. (a), as amended by Stats. 2009, ch. 110, § 1.)
Similarly, section 2105 requires final financial disclosures by providing that, “[e]xcept by court order for good cause, before or at the time the parties *891 enter into an agreement for the resolution of property or support issues other than pendente lite support, or, if the case goes to trial, no later than 45 days before the first assigned trial date, each party, or the attorney for the party in this matter, shall serve on the other party a final declaration of disclosure and a current income and expense declaration, executed under penalty of perjury on a form prescribed by the Judicial Council, unless the parties mutually waive the final declaration of disclosure.”
B.

Private or Nonjudicial Arbitrations and Mediations

“Sections 2104 and 2105 were enacted in 1993, as part of a statutory scheme designed to ensure that parties to a dissolution action meet their fiduciary duty to make full disclosure of their assets and liabilities. (§ 2100.)” (Elden v. Superior Court (1997) 53 Cal.App.4th 1497, 1507-1508 [62 Cal.Rptr.2d 322] (Elden).) Elden involved the question of whether the specific procedural and disclosure requirements of sections 2104 and 2105 applied even when the parties elected to settle issues pertaining to marital dissolution by private arbitration. (53 Cal.App.4th at pp. 1507-1508.) The Elden court held that by agreeing to submit their dispute to nonjudicial arbitration, the parties’ “controversy was removed from the procedures applicable to trials. (Severtson v. Williams Construction Co. (1985) 173 Cal.App.3d 86, 91 [220 Cal.Rptr. 400].)” (Elden, at p. 1508.)
In excusing the disclosure requirements of sections 2104 and 2105 for nonjudicial arbitration cases, the Elden court explained: “Although we recognize the public policy reasons for the disclosure sections set forth within the Family Code, we conclude that the parties to a dissolution who have agreed to engage in private arbitration of their property issues are entitled to adopt other, more summary procedures for financial disclosure. Here, for example, according to the arbitrator, the parties assured him that they had made the necessary disclosures. Under these circumstances, and because parties to private arbitrations waive a number of rights just as important as those set forth in the disclosure provisions at issue here, we conclude that the trial court erred in holding that Husband and Wife were required—prior to the arbitration—to submit the disclosure statement required by section 2105. If parties to a marital dissolution enter an agreement to settle their property or support issues by private or nonjudicial arbitration, they may do so without complying with section 2104 or section 2105.” (Elden, supra, 53 Cal.App.4th *892 at pp. 1508-1509.) The result in Elden was further supported “by the strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.” (Id. at p. 1509.)
We agree with Elden that parties to a marital dissolution action may opt out of litigation by agreeing to an alternative dispute resolution mechanism that does not involve all of the formalities required of an adversarial system of justice. Private mediation, like nonjudicial arbitration, offers a speedy and less expensive approach to resolution of issues arising from marital dissolution. As recognized by the California Supreme Court, “mediation [is] a form of alternative dispute resolution encouraged and, in some cases required by, the Legislature.” (Foxgate Homeowners’ Assn. v. Bramalea California, Inc. (2001) 26 Cal.4th 1, 14 [108 Cal.Rptr.2d 642, 25 P.3d 1117] (Foxgate).) “Implementing alternatives to judicial dispute resolution has been a strong legislative policy since at least 1986. In that year the Legislature enacted provisions for dispute resolution programs, including but not limited to mediation, conciliation, and arbitration, as alternatives to formal court proceedings which it found to be ‘unnecessarily costly, time-consuming, and complex’ as contrasted with noncoercive dispute resolution. (Bus. & Prof. Code, §§ 465, 466.)” (Foxgate, at p. 14, italics added.)
Private mediation, like nonjudicial arbitration, offers an alternate approach to resolve disputed issues arising from a marital dissolution. Requiring technical compliance with disclosure rules designed for adversarial litigation would undermine the strong public policy of allowing parties to choose speedy and less costly avenues for resolving their disputes. Parties who agree to settle their dispute by private mediation may also agree to make financial disclosures that do not meet the technical procedural requirements of sections 2104 and 2105. Thus, strict compliance with sections 2104 and 2105 is not required for private mediations that address issues arising out of a marital dissolution.
C.

Postmediation Disclosures Prior to Entry of Judgment

After a mediation in a marital dissolution case, parties must nonetheless comply with section 2106 prior to entry of judgment by the trial court. In pertinent part, section 2106 instructs that “no judgment shall be entered with respect to the parties’ property rights without each party, or the attorney for that party in this matter, having executed and served a copy of the final declaration of disclosure and current income and expense declaration.” Exceptions to this disclosure requirement are written waivers by the
*893 parties under section 2105, subdivision (d),[5] cases involving default judgments within the meaning of section 2110, and motions to waive disclosures for good cause under section 2107.[6]
In this case, Anna and Clark made multiple disclosures of their finances prior to entry of judgment. The marital settlement agreement that culminated from the mediation declares that “Clark and Anna agree that they have fully disclosed all financial matters.” Thus, the agreement addresses the parties’ cash assets and debts, provides for division of their real property, and addresses such specifics as whose name should appear on the cable bill, investigation of health insurance options, life insurance policies, and financial accounts for their children. Moreover, the agreement even confirms to Anna and Clark items of personal property such as specific items of children’s furniture, exercise equipment, linens and blankets, Christmas decorations, camping gear, and bookshelves. In the event Clark and Anna forgot to address any piece of property, the agreement includes the catchall provision that “[a]ny remaining unwanted items may be disposed of or sold at Clark’s discretion.”
After the mediation and before entry of judgment, Anna and Clark both served each other with preliminary financial disclosures. Anna served her final disclosure at the same time as her preliminary disclosure. However, Clark never filed a final disclosure.
We reject the argument that the trial court was precluded from entering judgment on the marital settlement agreement for lack of disclosures.
*894 The parties did serve each other with disclosures prior to trial and the subsequent entry of judgment. While Clark only served his preliminary disclosure, he may not be heard to complain about his own failure to serve the final financial disclosure. Also, having urged Anna to engage in mediation, Clark cannot now complain he received full disclosure during the mediation rather than by formal document under section 2104 or section 2105 prior to the mediation. (Elden, supra, 53 Cal.App.4th at pp. 1508-1509.) Allowing “a non-complying party [to] unilaterally undo a judgment after trial when he or she would have to comply to obtain disclosure before trial [would] create[] a most perverse set of incentives: ... [A] party could deliberately not comply with disclosure requirements, keep mum, see if the trial results in an acceptable judgment, and then have the opportunity to obtain a better result by pulling the non-disclosure card out of his or her sleeve on appeal or new trial motion. That is the sort of absurdity of statutory result that courts simply do not countenance.” (In re Marriage of Steiner & Hosseini (2004) 117 Cal.App.4th 519, 528 [11 Cal.Rptr.3d 671].) Accordingly, we reject Clark’s argument that the lack of financial disclosures precluded the trial court from subsequently entering judgment on the mediated agreement.
II

Rule 30.7 of the Placer County Local Rules of Court

Clark next argues the trial court erred in entering judgment on the marital settlement agreement because it did not comply with the requirements of rule 30.7 that such agreements be notarized and admonish parties of their right to seek legal counsel.[7] We conclude rule 30.7 is invalid insofar as the rule imposes requirements on a marital settlement agreement in addition to those *895 required by Evidence Code section 1123, Family Code section 2550, and Code of Civil Procedure section 664.6.[8]
A.

The Trial Court Excused Compliance with Rule 30.7

The trial court rejected Clark’s challenge to the marital settlement agreement for noncompliance with rule 30.7 as follows: “The court finds that neither party was represented by an attorney in the negotiation and preparation of the Settlement Agreement; it was all accomplished through mediation with the Live at Peace Ministries. Compliance with Placer County Superior Court Rule 30.7[A] and [B] is not required. The signatures of the parties were not notarized as required by Rule 30.7[C], which is a requirement in order that the Court can be assured that the signatures are genuine, in this case that is not an issue, the parties have acknowledged that the signatures are theirs. In the Rules of Procedure for Christian Conciliation, to which the parties agreed to be bound they were advised of their right to legal representation in the mediation process.”
B.

Review of Local Rules of Court

As the California Supreme Court explained in the seminal case of Elkins v. Superior Court (2007) 41 Cal.4th 1337 [63 Cal.Rptr.3d 483, 163 P.3d 160] (Elkins), “trial courts possess inherent rulemaking authority as well as rulemaking authority granted by statute. (Rutherford v. Owens-Illinois, Inc. (1997) 16 Cal.4th 953, 967 [67 Cal.Rptr.2d 16, 941 P.2d 1203] (Rutherford)-, Code Civ. Proc., §§ 128, 111, 575.1; Gov. Code, § 68070.) ‘It is . . . well established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them. [Citation.] That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation . . . *896 in order to insure the orderly administration of justice. [Citation.]” ’ (Rutherford, supra, 16 Cal.4th at p. 967.)
“. . . A trial court is without authority to adopt local rules or procedures that conflict with statutes or with rules of court adopted by the Judicial Council, or that are inconsistent with the California Constitution or case law. (Rutherford, supra, at pp. 967-968; see also Hall v. Superior Court (2005) 133 Cal.App.4th 908, 916-918 [35 Cal.Rptr.3d 206].) As provided in Government Code section 68070, subdivision (a): ‘Every court may make rules for its own government and the government of its officers not inconsistent with law or with the rules adopted and prescribed by the Judicial Council.’ (Italics added; see also 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, § 204, p. 272; id. (2006 supp.) § 204, pp. 87-88.) In sum, local courts may not create their own rules of evidence and procedure in conflict with statewide statutes.” (Elkins, supra, 41 Cal.4th at pp. 1351-1352.)
One court summarized: “A rule of court may go beyond the provisions of a related statute” only “so long as it reasonably furthers the statutory purpose. (Butterfield v. Butterfield (1934) 1 Cal.2d 227, 228 [34 P.2d 145] [rule requiring points and authorities in support of motion for change of venue]; Mann v. Cracchiolo (1985) 38 Cal.3d 18, 29 [210 Cal.Rptr. 762, 694 P.2d 1134] [rule limiting time to file opposition to summary judgment motion].) However, if a statute even implicitly or inferentially reflects a legislative choice to require a particular procedure, a rule of court may not deviate from that procedure. (People v. Hall [(1994)] 8 Cal.4th [950,] 961-962 [35 Cal.Rptr.2d 432, 883 P.2d 974] [rule limiting aggravating factors to be considered in imposing sentence enhancements conflicted with Legislature’s evident intent" to apply full range of factors]; California Court Reporters Assn. v. Judicial Council of California [(1995)] 39 Cal.App.4th [15,] 26-31 [46 Cal.Rptr.2d 44] [rule permitting electronic recording of superior court proceedings conflicted with implicit legislative intent that such proceedings be stenographically recorded]; Cox v. Superior Court [(1993)] 19 Cal.App.4th [1046,] 1050-1051 [23 Cal.Rptr.2d 751] [local rule requiring notice of motion to suppress at preliminary hearing conflicted with statute raising ‘reasonable inference’ that no prior notice is required].)” (Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc. (1997) 60 Cal.App.4th 352, 364 [70 Cal.Rptr.2d 449], italics added.)
And, as the Elkins court noted, “Reviewing courts have not hesitated to strike down local court rules or policies on the ground they are inconsistent with statute, with California Rules of Court promulgated by the Judicial Council, or with case law or constitutional law. Appellate decisions have invalidated local rules or restricted their application in many areas of affected litigation, including dissolution actions . . . .” (Elkins, supra, 41 Cal.4th at p. 1352.)
*897 A notable example among decisions striking down local rules cited by the Elkins court is the case of Hogoboom v. Superior Court (1996) 51 Cal.App.4th 653 [59 Cal.Rptr.2d 254]. (Elkins, supra, 41 Cal.4th at p. 1352, fn. 5.) In Hogoboom, the Court of Appeal struck down a local rule imposing a family law mediation fee in addition to fees specifically established by statute. (51 Cal.App.4th at p. 656.) The Hogoboom court concluded that the Legislature “has so fully covered by general law matters relating to fees for family law and domestic violence mediation occurring in conciliation court that it must be considered a matter of state concern” that an additional fee on family law mediation is precluded. {Ibid.) Accordingly, a local rule imposing an additional fee on family court mediation was held invalid. {Ibid.)
C.

Entry of Judgment on Mediated Agreements in Marital Dissolution Proceedings

Section 2550 allows parties to divide community property by written agreement.[9] “[S]ection 2550 contemplates that the parties in a marital dissolution action can agree on a lopsided division of community property, but only if it is evidenced (1) by a written agreement of the parties; or (2) by an oral stipulation of the parties in open court. If such an agreement is entered into, the court must accept the parties’ written agreement or in-court oral stipulation regarding the disposition of their property. {In re Marriage of Cream (1993) 13 Cal.App.4th 81, 91 [16 Cal.Rptr.2d 575].) The court’s ‘only role with regard to a proper stipulated disposition of marital property is to accept the stipulation and, if requested, to incorporate the disposition into the judgment.’ (Id. at p. 91.)” (In re Marriage of Dellaria & Blickman-Dellaria (2009) 172 Cal.App.4th 196, 201 [90 Cal.Rptr.3d 802]; accord, Mejia v. Reed (2003) 31 Cal.4th 657, 666 [3 Cal.Rptr.3d 390, 74 P.3d 166].) Section 2550 does not require notarization or advisement to seek legal counsel when allowing a written agreement to divide property.
We note that “ ‘[property settlement agreements occupy a favored position in the law of this state . . . .’ {Adams v. Adams (1947) 29 Cal.2d 621, 624 [177 P.2d 265].) Courts are reluctant to disturb them ‘except for equitable considerations. A property settlement agreement, therefore, that is not tainted by fraud or compulsion or is not in violation of the confidential relationship *898 of the parties is valid and binding on the court. [Citations.]’ (Ibid.)” (In re Marriage of Egedi (2001) 88 Cal.App.4th 17, 22 [105 Cal.Rptr.2d 518].)
Once a settlement agreement is entered into by the parties, they may avail themselves of a quick and effective avenue for enforcement by making a motion to enter judgment on the agreement. To this end, Code of Civil Procedure section 664.6 provides: “If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement.”
We recognize that “ ‘[t]he statutory procedure for enforcing settlement agreements under section 664.6 is not exclusive: It is merely an expeditious, valid alternative statutorily created. (Kilpatrick v. Beebe (1990) 219 Cal.App.3d 1527, 1529 [269 Cal.Rptr. 52].) Settlement agreements may also be enforced by motion for summary judgment, by a separate suit in equity or by amendment of the pleadings to raise the settlement as an affirmative defense.’ (Nicholson v. Barab (1991) 233 Cal.App.3d 1671, 1681 [285 Cal.Rptr. 441]; see also Levy v. Superior Court [(1995)] 10 Cal.4th [578,] 586, fn. 5 [41 Cal.Rptr.2d 878, 896 P.2d 171]; Robertson v. Chen [(1996)] 44 Cal.App.4th [1290,] 1293 [52 Cal.Rptr.2d 264] [‘Section 664.6 is not the exclusive means of enforcing a settlement agreement; it is simply a summary procedure available when certain prerequisites are satisfied’].)” (Gauss v. GAF Corp. (2002) 103 Cal.App.4th 1110, 1122 [127 Cal.Rptr.2d 370].) Even though it is not exclusive, Code of Civil Procedure section 664.6 is intended to provide a means for enforcing an agreement that requires nothing more than a single motion. “The Legislature created this procedure to benefit not only parties but also the justice system, relieving it of the burden of more time-consuming and expensive processes.” (Provost v. Regents of University of California (2011) 201 Cal.App.4th 1289, 1298 [135 Cal.Rptr.3d 591].)
Code of Civil Procedure section 664.6 requires only that a settlement agreement be reduced to writing and signed by the parties, or orally stated in court. For a written settlement agreement reached in a mediation, the Evidence Code also requires that it demonstrate a present intent of the parties to be bound by the terms of the agreement.[10] (See generally Fair v. Bakhtiari (2006) 40 Cal.4th 189, 197 [51 Cal.Rptr.3d 871, 147 P.3d 653].)
*899 The Legislature has enacted statutes to further the strong public policy of encouraging out-of-court resolution of disputes. (Elden, supra, 53 Cal.App.4th atpp. 1507-1509; see Cassel v. Superior Court (2011) 51 Cal.4th 113, 118 [119 Cal.Rptr.3d 437, 244 P.3d 1080].) The Legislature has imposed specific requirements for settlement agreements and provided an expedient method of enforcing them. There is nothing in the Evidence Code or Family Code or in the Code of Civil Procedure that requires a marital settlement agreement to be notarized or contain talismanic language to inform unrepresented parties about the right to legal counsel. (See Evid. Code, § 1123; Earn. Code, § 2550; Code Civ. Proc., § 664.6.) Thus, the addition of requirements to those imposed by the California codes for mediated marital agreements is inconsistent with the Legislature’s specifications of the requirements for enforceability. It has long been settled that “[a] court may not by rule change or add to procedural requirements established by statutory provision. An order attempting to add requirements to those prescribed by a statute is to such an extent a nullity and void. (Cf. Butterfield v. Butterfield [(1934)] 1 Cal.2d 227, 228 [34 P.2d 145]; Henry v. Willett [(1922)] 60 Cal.App. 244, 252 [212 P 698].)” (Conae v. Conae (1952) 109 Cal.App.2d 696, 697 [241 P.2d 266].) Thus, we conclude rule 30.7 is invalid insofar as it imposes additional requirements on entry of judgment on a mediated agreement that resolves marital dissolution issues.
To adopt the holding urged by Clark could result in differing, and perhaps conflicting, requirements from various local rules of court. This case provides an apt example. Here, the parties availed themselves of a mediation program offered by Live at Peace Ministries. That program yielded a mutually acceptable agreement fully consistent with the governing statutes. However, if trial courts have discretion to invalidate such otherwise valid agreements based on additional requirements of authenticity imposed by local court rules, then Live at Peace Ministries and other mediators in California would have to (1) anticipate where the mediated settlement agreement would most likely be filed and (2) understand and comply with the local rules governing the county of filing. However, parties may not know where they will file for dissolution. “[Bjecause there is no specific statute governing venue in proceedings for legal separation, the venue rules of [Code of Civil Procedure] section 395, subdivision (a), applicable to civil actions generally, govern nullity or separation actions, and the proper place for trial is ordinarily the county of respondent’s residence.” (Forster v. Superior Court (1992) 11 Cal.App.4th 782, 786-787 [14 Cal.Rptr.2d 258]; but see Code Civ. Proc., § 664.6 [either party may bring a motion to enforce a mediated agreement].)
*900 In short, Code of Civil Procedure section 664.6 provides an efficient and certain manner in which to enforce a settlement agreement so long as that section’s requirements are satisfied. As our Supreme Court has noted, “the Legislature enacted section 664.6, which created a summary, expedited procedure to enforce settlement agreements when certain requirements that decrease the likelihood of misunderstandings are met.” (Levy v. Superior Court (1995) 10 Cal.4th 578, 585 [41 Cal.Rptr.2d 878, 896 P.2d 171].) This legislative intent would be thwarted if a trial court could decline to enforce an otherwise valid settlement agreement on grounds that section 664.6 employs the word “may.” (See People v. Ledesma (1997) 16 Cal.4th 90, 95 [65 Cal.Rptr.2d 610, 939 P.2d 1310].) Thus, trial courts lack discretion to strike down mediated agreements that otherwise comply with state law.
We note that even the trial court in this case did not enforce rule 30.7, excusing performance because the marital settlement agreement comported with the intent underlying the rule. It would be incongruous to ignore the statutes governing mediated agreements in order to give trial courts discretion to ignore local rules of court.
We affirm the trial court’s entry of judgment on the marital settlement agreement, but do so because rule 30.7 cannot impose requirements for enforcement of mediated settlement agreements in addition to those specified by statute. (Evid. Code, § 1123; Earn. Code, § 2550; Code Civ. Proc., § 664.6.)
Ill, IV*
V

Undue Influence

In the trial court, Clark argued the marital settlement agreement is unenforceable because the mediator engaged in undue influence during the mediation. On appeal, he changes his argument to assert Anna exerted undue influence on him during the mediation. As part of his argument, he asserts Anna gained an unfair division of property because of the mediation. In so arguing, Clark acknowledges the confidentiality extended to mediation proceedings undermines his argument. Elsewhere, Clark even notes he objected to admission of evidence regarding the intent of the parties in entering into the marital settlement agreement “on the basis of mediation confidentiality.” *901 We conclude Clark’s assertion of undue influence is precluded by the mediation confidentiality imposed by the Evidence Code. In addition, there is no presumption of undue influence in marital settlement agreements reached as a result of mediation.
A.

Mediation Confidentiality

Evidence Code section 1119, subdivision (a), provides: “No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given.” Construing Evidence Code section 1119, the California Supreme Court “conclude[d] that there are no exceptions to the confidentiality of mediation communications or to the statutory limits on the content of mediator’s reports. Neither a mediator nor a party may reveal communications made during mediation.” (Foxgate, supra, 26 Cal.4th at p. 4.) More recently, the Supreme Court held that mediation confidentiality even extends to preclude complaints of deception and coercion brought by a client against his own attorney for the attorney’s conduct in connection with a mediation. (Cassel v. Superior Court, supra, 51 Cal.4th at p. 118.) Accordingly, Clark cannot establish undue influence by Anna or any other participant in the mediation under the mediation confidentiality provisions of Evidence Code section 1119.
B.

Presumption of Undue Influence

Rather than attempting to introduce evidence showing Anna actually engaged in undue influence during the mediation, Clark resorts to the rule that “ ‘[w]hen an interspousal transaction advantages one spouse, “[t]he law, from considerations of public policy, presumes such transactions to have been induced by undue influence.” ’ ” (In re Marriage of Kieturakis (2006) 138 Cal.App.4th 56, 84 [41 Cal.Rptr.3d 119] (Kieturakis), quoting In re Marriage of Haines (1995) 33 Cal.App.4th 277, 293 [39 Cal.Rptr.2d 673].) To this end, Clark parses the division of property in the marital settlement agreement to assert Anna got a better deal. On this basis, Clark asserts Anna had the burden of disproving undue influence in the mediation that led to the purportedly unfair agreement. We disagree.
*902 In Kieturakis, the Court of Appeal held that marital settlement agreements produced as a result of mediation cannot be presumed to be the product of undue influence. (Kieturakis, supra, 138 Cal.App.4th at p. 85.) As the Kieturakis court explained, “ ‘Voluntary participation and self-determination are fundamental principles of mediation . . . .’ (Advisory Com. com., Cal. Rules of Court, rule 1620.3; see also, e.g., Travelers Casualty & Surety Co. v. Superior Court (2005) 126 Cal.App.4th 1131, 1139 [24 Cal.Rptr.3d 751] [concept of self-determination is critical to mediation process]; Saeta v. Superior Court (2004) 117 Cal.App.4th 261, 270 [11 Cal.Rptr.3d 610] [same].) It can thus be expected that most mediators would . . . consider it their duty to attempt to determine whether the parties are ‘acting under their own free will’ in the mediation. ‘[P]ower imbalancefs] between spouses’ are a recognized concern when family matters are mediated. (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2004) f 3:516, p. 3-81 (rev. # 1, 1996), italics omitted) [spouse who is overbearing or dominates conversation may have advantage].) Therefore, ‘[d]ivorce mediators generally work to balance the negotiating power between the parties. This tends to produce agreements that are more fair and voluntary, rather than coerced.’ (Roth et al., The Alternative Dispute Resolution Practice Guide (2005) §31:5, p. 31-5.) Thus, while mediation is no guarantee against the exercise of undue influence, it should help to minimize unfairness in the process by which a marital settlement agreement is reached.
“Even more importantly, to apply the presumption of undue influence to mediated marital settlements would severely undermine the practice of mediating such agreements. Application of the presumption would turn the shield of mediation confidentiality into a sword by which any unequal agreement could be invalidated. We do not believe that the Legislature could have intended that result when it provided for spousal fiduciary duties on the one hand and for mediation confidentiality on the other.” (Kieturakis, supra, 138 Cal.App.4th at p. 85.)
Clark contends Kieturakis was incorrectly decided but offers no explanation as to how that decision might err. In addition to urging us to reject the holding in Kieturakis, Clark also attempts to distinguish that case by noting it involved a marital settlement agreement that expressly stated it was not the product of undue influence. (Kieturakis, supra, 138 Cal.App.4th at p. 64.) Clark notes the marital settlement agreement in this case contains no declaration that it was free from undue influence. This is a distinction without a difference.
As Kieturakis’s survey of mediation authority shows, mediators strive to render negotiations fair and voluntary. (Kieturakis, supra, 138 Cal.App.4th at p. 85.) Combined with the mediation confidentiality that *903 Evidence Code section 1119 imposes, a presumption of undue influence undermines the strong public policy in favor of mediation. (Kieturakis, at pp. 85-86.) The Legislature has already addressed the requirements of admissible mediated agreements. (Evid. Code, § 1123.) It is not our province to impose a new requirement that mediated agreements must declare they are free from undue influence if they are to be valid. (Osborn v. Hertz Corp. (1988) 205 Cal.App.3d 703, 711 [252 Cal.Rptr. 613].)
We also reject Clark’s assertion that the mediation yielded an agreement that resulted in an unfair division of property favoring Anna. It is well settled that parties may agree in writing to an unequal division of marital property. (In re Marriage of Cream, supra, 13 Cal.App.4th at p. 90.) Moreover, crediting Clark’s argument would implicate the Kieturakis court’s concern that “[m]any mediated settlements might be jeopardized because relatively few of them, upon close scrutiny, would likely be found to have been perfectly equal. [(¡[] To countenance that result would contravene the strong legislative and judicial policies favoring mediation and settlement. (Code Civ. Proc., § 1775, subd. (c) [mediation may help reduce courts’ caseloads; public interest dictates that mediation ‘be encouraged and used where appropriate by the courts’]; Bus. & Prof. Code, § 465, subd. (b) [greater use of mediation should be encouraged]; Rojas v. Superior Court[ (2004)] 33 Cal.4th[ 407,] 415 [15 Cal.Rptr.3d 643, 93 P.3d 260] [policy favoring mediation]; Stewart v. Preston Pipeline Inc. [(2005)] 134 Cal.App.4th [1565,] 1583 [36 Cal.Rptr.3d 901] [policies favoring mediation and settlement]; In re Marriage of Friedman (2002) 100 Cal.App.4th 65, 72 [122 Cal.Rptr.2d 412] [it is ‘well settled that property settlement agreements occupy a favored position in California’].)” (Kieturakis, supra, 138 Cal.App.4th at p. 86.)
Accordingly, we reject Clark’s undue influence argument. As Clark acknowledges, the mediation confidentiality provisions of Evidence Code section 1119 protect the mediation process and preclude any claim of undue influence. Further, there is no presumption of undue influence in marital settlement agreements reached as a result of mediation.
VI-VIII*
*904 DISPOSITION
The judgment is affirmed. Respondent Anna Woolsey shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)
Hull, Acting P. J., concurred.

 Mediation is “a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement.” (Evid. Code, § 1115, subd. (a).)

 For ease of reference, we refer to the parties by their first names. (See In re Marriage of Smith (1990) 225 Cal.App.3d 469, 475-476, fn. 1 [274 Cal.Rptr. 911].)

 Undesignated statutory references are to the Family Code.

 Although titled a separation agreement, we shall refer to the document as a marital settlement agreement because it comprehensively resolved issues related to dissolution of marriage—rather than just separation. At the same time the parties entered the marital separation agreement, they also agreed on “the following public use statement,” which explained: “Clark and Anna met for four days to work towards reconciling their relationship. With God’s help, and with the desire to honor and glorify God, Clark and Anna heard each other and addressed their failures. Although they are filing for divorce, they desire to live a life of peace as they continue to serve and parent their children. Please pray for them as they grow in their relationship with God, their children, and others.”

 Subdivision (d) of section 2105 provides: “The parties may stipulate to a mutual waiver of the requirements of subdivision (a) concerning the final declaration of disclosure, by execution of a waiver under penalty of perjury entered into in open court or by separate stipulation. The waiver shall include all of the following representations: HO (1) Both parties have complied with Section 2104 and the preliminary declarations of disclosure have been completed and exchanged, [f] (2) Both parties have completed and exchanged a current income and expense declaration, that includes all material facts and information regarding that party’s earnings, accumulations, and expenses. [j[] (3) Both parties have fully complied with Section 2102 and have fully augmented the preliminary declarations of disclosure, including disclosure of all material facts and information regarding the characterization of all assets and liabilities, the valuation of all assets that are contended to be community property or in which it is contended the community has an interest, and the amounts of all obligations that are contended to be community obligations or for which it is contended the community has liability, [f] (4) The waiver is knowingly, intelligently, and voluntarily entered into by each of the parties. HO (5) Each party understands that this waiver does not limit the legal disclosure obligations of the parties, but rather is a statement under penalty of perjury that those obligations have been fulfilled. Each party further understands that noncompliance with those obligations will result in the court setting aside the judgment.”

 In pertinent part, subdivision (b)(3) of section 2107 allows a party who has properly served declarations of disclosure to move for a “waiver of receipt of the noncomplying party’s preliminary declaration of disclosure pursuant to Section 2104 or final declaration of disclosure pursuant to Section 2105.”

 Rule 30.7 provides:
“No property settlement agreement, or stipulation or agreement for entry of any order or judgment wherein the parties settle any issue relating to property, support, custody, visitation or paternity will be approved by the Court or incorporated by reference into a judgment without meeting the following requirements:
“A. If both parties are represented by counsel, the agreement must be signed by both parties and their respective counsel.
“B. If any one of the parties is represented by counsel, the agreement must be signed by both parties and the attorney for the represented party. The signature of the unrepresented party must be notarized, or acknowledged before a clerk of the Court under Civil Code § 1181(a) and must appear immediately after the following statement: [Effective date 7/1/01]
“ ‘The undersigned party has been advised to consult an attorney regarding the subject matter of this agreement, but has declined to do so.’
“C. If neither party is represented by counsel, the agreement must be signed by both parties. The signatures of the parties must be notarized, or acknowledged before a clerk of the court under Civil Code § 1181(a) and are to appear immediately after the following statement: *895 “ ‘The undersigned parties understand that they have the right to consult an attorney regarding the subject matter of this agreement and knowingly give up that right.’ [Effective date 7/1/01]” (<http://www.placer.courts.ca.gov/forms/Local_Rules_Effective_7-l-13.pdf> [as of Oct. 22, 2013]).

 The trial court excused the notarization and admonition of counsel requirements of rule 30.7. The failure of respondent to address the trial court’s ruling excusing compliance with the admonition of counsel requirement does not govern our analysis or conclusion. It is well settled that a respondent’s failure to address a particular issue, or even to file a brief, does not determine the outcome of an appeal. (’Walker v. Porter (1974) 44 Cal.App.3d 174, 177 [118 Cal.Rptr. 468]; Baldwin v. Baldwin (1944) 67 Cal.App.2d 175, 176 [153 P.2d 567].)

 Section 2550 provides: “Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, or as otherwise provided in this division, in a proceeding for dissolution of marriage or for legal separation of the parties, the court shall, either in its judgment of dissolution of the marriage, in its judgment of legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community estate of the parties equally.”

 Evidence Code section 1123 provides: “A written settlement agreement prepared in the course of, or pursuant to, a mediation, is not made inadmissible, or protected from disclosure, by provisions of this chapter if the agreement is signed by the settling parties and any of the following conditions are satisfied: []□ (a) The agreement provides that it is admissible or subject to disclosure, or words to that effect. Q] (b) The agreement provides that it is *899 enforceable or binding or words to that effect, [f] (c) All parties to the agreement expressly agree in writing, or orally in accordance with Section 1118, to its disclosure. ['][] (d) The agreement is used to show fraud, duress, or illegality that is relevant to an issue in dispute.”

See footnote, ante, page 881.

See footnote, ante, page 881.