Filed 12/19/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GILDA LAPPE, | B255704 |
| Petitioner, | (Los Angeles County Super. Ct. No. BD539336) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| MURRAY LAPPE, | |
| Real Party in Interest. | |

PETITION for Writ of Mandate from an order of the Superior Court of Los Angeles County, Thomas Trent Lewis, Judge. Petition granted.

Barbakow & Ribet, Daniel Barbakow, Claudia Ribet and Elizabeth Skorcz Anthony for Petitioner.

No Appearance for Respondent.

Law Offices of James M. Donovan, James M. Donovan, Michael J. Glenn; Walzer & Melcher LLP, Christopher Melcher and Anthony D. Storm for Real Party in Interest.

_____

**INTRODUCTION**

This writ proceeding arises from a marital dissolution action brought by petitioner Gilda Lappe against her former husband and real party in interest Murray Lappe.[1] The parties agreed to resolve their property and support issues through mediation, during which they purportedly exchanged certain financial disclosure declarations that are mandated by the Family Code. They also executed a marital settlement agreement, which was incorporated into a stipulated judgment. Shortly after entry of judgment, Gilda learned that Murray recently sold a company he founded during the marriage. In the settlement agreement, Gilda relinquished her community share of the company for $10 million. Murray received approximately $75 million from the sale.

Following this revelation, Gilda filed an application to set aside the judgment on grounds of fraud and duress. In connection with the application, Gilda served discovery on Murray requesting, among other things, the financial disclosure declarations that were exchanged prior to entry of judgment. Murray refused to produce the declarations, asserting they were covered by the mediation confidentiality statutes, insofar as they constituted writings that were "prepared for the purpose of, in the course of, or pursuant to, a mediation." (Evid. Code, § 1119, subd. (b).) Gilda moved to compel production. The trial court denied the motion on mediation confidentiality grounds.

---

[1] We refer to Gilda and Murray Lappe by their first names for the sake of clarity and not out of disrespect.

In her petition for writ of mandate challenging the trial court's order, Gilda contends the mediation confidentiality statutes do not apply because the subject financial disclosure declarations were necessarily prepared pursuant to and for the purpose of complying with the Family Code's statutory mandate, not because the parties participated in mediation. We agree, and grant Gilda's petition.

## FACTS AND PROCEDURAL BACKGROUND

Gilda and Murray were married for 16 years and have two children together. Gilda was a stay-at-home mother during their marriage. Murray is trained as a medical doctor and is a successful businessman.

On February 10, 2011, Gilda filed a petition for dissolution of the marriage. The parties agreed to settle their property and support issues through mediation without representation by counsel. During the mediation, Gilda and Murray signed declarations stating that service of the preliminary and final declarations of disclosure had been made on the other party as required by the Family Code. Notwithstanding these declarations, Gilda maintains that she did not serve Murray with a preliminary or final declaration of disclosure, nor did she receive a preliminary or final declaration from Murray. She avers the declaration regarding service was one of several documents that Murray "coerced" her to sign while they were alone in the mediator's office. Murray denies the allegation.[2]

During the mediation, the parties also executed a marital settlement agreement. As pertinent to the instant proceeding, the agreement provides that Murray shall pay Gilda a total of $10 million in full satisfaction of her entire community interest in shares

---

[2] We state the parties' competing allegations for the purpose of providing context and make no judgment as to whose statement of the facts is correct. Factual disputes concerning the alleged coercion are committed in the first instance to the trial court, which may resolve them in ruling on Gilda's pending motion to set aside the judgment. To the extent Gilda intends to rely on communications made pursuant to or in the course of the mediation, the trial court's review of such evidence will of course be constrained by mediation confidentiality. (See, e.g., *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 133-137 (*Cassel*) [evidence of alleged attorney malpractice committed in course of mediation is subject to mediation confidentiality]; *Wimsatt v. Superior Court* (2007) 152 Cal.App.4th 137, 163 (*Wimsatt*) [same].)

3

of eScreen, Inc. With respect to the declarations of disclosure, the agreement also states: "The parties' Preliminary/Final Declarations of Disclosure shall be inadmissible in a court of law, and otherwise protected from disclosure, pursuant to the provisions of Section 1119(b) of the *California Evidence Code*." Evidence Code section 1119, subdivision (b) bars discovery or admissibility of writings "prepared for the purpose of, in the course of, or pursuant to, a mediation." On August 2, 2011, the trial court entered a stipulated judgment, which incorporated the marital settlement agreement.

On April 24, 2012, Gilda filed an application to set aside the judgment on grounds of fraud, perjury, duress, and mistake. In her supporting declaration, Gilda asserted that in January 2012, less than five months after the judgment was entered, she learned Murray was in the process of selling eScreen and all equity shares he acquired in the company through the marital settlement agreement. As a result of the sale, Murray received approximately $75 million pre-tax for the eScreen shares. Gilda averred that Murray never disclosed he was shopping eScreen for sale, and had she known as much, she would not have agreed to surrender her community interest in the company for only $10 million.

In connection with her application to set aside the judgment, Gilda served a request for production of documents on Murray, which included a request for the declaration of disclosure that Murray served upon Gilda prior to entry of judgment. Murray objected to the request and refused to produce the declaration on the ground that it was protected from disclosure by the mediation confidentiality statutes. Gilda brought a motion to compel production.

The trial court appointed a referee to make recommendations regarding the discovery dispute. The referee concluded the declaration of disclosure was not subject to mediation confidentiality because the document had "independent legal significance" and the "public policy" declared by the Family Code favoring disclosure to ensure fair and equal property divisions "overrides" mediation confidentiality. Gilda applied for an order confirming the referee's recommendation and findings. Murray objected to the recommendation.

4

In his objections, Murray principally argued that the referee erred by relying on a nonstatutory exception for documents having "independent legal significance" in violation of the Supreme Court's repeated instruction that courts may not craft judicial exceptions to mediation confidentiality. Murray also argued the recommendation ignored the parties' express agreement that the declarations of disclosure were to be deemed inadmissible and shielded from discovery under the mediation confidentiality provisions of the Evidence Code.

The trial court agreed with Murray. In view of the Supreme Court authorities consistently rejecting judicially crafted exceptions to mediation confidentiality, and the parties' stipulation in their marital settlement agreement that Evidence Code section 1119 applied to the declarations of disclosure, the court ruled the mediation confidentiality statutes barred compelled production of the disclosure declarations.

## DISCUSSION

1.          *Standard of Review*

We review the order denying Gilda's motion to compel for an abuse of discretion. (*People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071 (*Lockyer*).) Under this standard, a trial court's ruling on a discovery motion will be overturned upon a prerogative writ if there is "no substantial basis" for the manner in which the court exercised its discretion or if the court applied a "patently improper standard" for its decision. (*Coriell v. Superior Court* (1974) 39 Cal.App.3d 487, 491, fn. 1.) Where the propriety of a discovery order turns on statutory interpretation, we review the issue de novo, as a question of law. (*Lockyer,* at p. 1071.)

Gilda contends the Evidence Code's mediation confidentiality provisions cannot be applied in a marital dissolution proceeding to bar the discovery and admissibility of financial disclosures mandated by the Family Code. To put the issue in context, we begin with a review of each statutory scheme.

2.          *Family Code Disclosure Requirements*

As codified in Family Code section 2100 et seq., California law recognizes the vital importance of "full and accurate disclosure of all assets and liabilities" at the "early

5

stages" of a marital dissolution proceeding to ensure fair and sufficient child and spousal support awards and to achieve a proper division of community and quasi-community assets and liabilities. (Fam. Code, § 2100, subds. (a) & (c); Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2014) ¶ 11:40, p. 11-8.) This includes a "continuing duty" on the part of each spouse to "immediately, fully, and accurately update and augment that disclosure" so both will have "full and complete knowledge of the relevant underlying facts." (Fam. Code, § 2100, subd. (c).)

To implement this policy, the Family Code mandates that each spouse "shall serve on the other party" a "preliminary" and "final" declaration of disclosure. (Fam. Code, § 2103.) The preliminary declaration of disclosure provides a general inventory of the parties' respective assets at the outset of dissolution proceedings.[3] The final declaration requires far more extensive disclosures.

The Family Code mandates that the final declaration of disclosure "shall include" "[a]ll material facts and information" regarding (1) the characterization of all assets and liabilities; (2) the valuation of all assets that are contended to be community property; (3) the amounts of all obligations that are contended to be community obligations; and (4) the earnings, accumulations, and expenses of each party. (Fam. Code, § 2105, subd. (b); Hogoboom & King, Cal. Practice Guide: Family Law, *supra,* ¶¶ 11:68, 11:87.) The final declaration must also contain "accurate and complete written disclosure of any investment opportunity, business opportunity, or other income-producing opportunity that presents itself after the date of separation, but that results from any investment,

---

[3]       Specifically, "[t]he preliminary declaration of disclosure shall set forth with sufficient particularity," to the extent that "a person of reasonable and ordinary intelligence can ascertain [them]," "[t]he identity of all assets in which the declarant has or may have an interest and all liabilities for which the declarant is or may be liable, regardless of the characterization of the asset or liability as community, quasi-community, or separate." (Fam. Code, § 2104, subd. (c)(1).) It also must include "[t]he declarant's percentage of ownership in each asset and percentage of obligation for each liability where property is not solely owned by one or both of the parties." (*Id.*, subd. (c)(2).) The preliminary declaration of disclosure must be served either concurrently or within 60 days of filing a petition for dissolution or response thereto. (*Id.*, subd. (f).)

6

significant business activity outside the ordinary course of business, or other income-producing opportunity of either spouse from the date of marriage to the date of separation, inclusive." (Fam. Code, §§ 2102, subd. (a)(2), 2105, subd. (d)(3).) This written disclosure "shall be made in sufficient time for the other spouse to make an informed decision as to whether he or she desires to participate in the investment opportunity, business, or other potential income-producing opportunity, and for the court to resolve any dispute regarding the right of the other spouse to participate in the opportunity." (*Ibid.*)

Because the Family Code's extensive disclosure requirements could reveal sensitive financial information, the final declarations of disclosure, like the preliminary declarations, must be served on the other spouse, but are not to be filed with the court. (Fam. Code, §§ 2105, subd. (a), 2104, subd. (b); Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶¶ 11:52, 11:86.) However, unless there has been a valid waiver, the Family Code mandates that each party "shall execute and file with the court a declaration signed under penalty of perjury stating that service of the final declaration of disclosure . . . was made on the other party" before judgment is entered. (Fam. Code, § 2106.) A judgment entered when the parties have failed to comply with the declaration of disclosure requirements is subject to set aside to the extent the nondisclosure materially affected the judgment. (Fam. Code, §§ 2105, subd. (c), 2107, subd. (d); see *In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 527-528.) Upon a motion to set aside the judgment, the court may order the parties to provide the court with the preliminary and final declarations of disclosure that were exchanged between them. (Fam. Code, § 2107, subd. (e).)

The mandatory declaration of disclosure requirements are subject to a few narrow statutory exemptions. Under Family Code section 2105, subdivision (a), the court has discretion to excuse a party from serving a final declaration of disclosure upon a showing of "good cause." Additionally, on specified conditions, the parties may stipulate to a

mutual waiver of the final declaration requirement.[4] (Fam. Code, § 2105, subd. (d).) Unless the mandatory conditions specified in section 2105 are met, no purported waiver is effective to excuse exchange of the prescribed final declarations.[5] (*In re Marriage of Fell* (1997) 55 Cal.App.4th 1058, 1064-1065 ["Where the Legislature permits a particular, limited waiver of a right upon satisfaction of a set of conditions, it intends that no other related waivers be permitted."].)

Notwithstanding the foregoing, courts have recognized that when parties to a marital dissolution agree to settle their property or support issues by nonjudicial arbitration or mediation, they may do so without strictly complying with the technical requirements of Family Code sections 2104 or 2105. (See *Elden v. Superior Court* (1997) 53 Cal.App.4th 1497, 1508-1509 (*Elden*) ["Husband and Wife here could arbitrate to an award whether or not they had filed either preliminary declarations or final declarations"]; *In re Marriage of Woolsey* (2013) 220 Cal.App.4th 881, 892 (*Woolsey*) [where parties agreed to mediation, "strict compliance" with the "technical procedural requirements" of sections 2104 and 2105 was not required].) However, regardless of the procedures adopted in mediation or arbitration, the parties are nonetheless required to execute and serve final declarations of disclosure before the court may enter judgment. (*Elden,* at p. 1511 ["pursuant to section 2106, the trial court could not grant Husband's motion and enter judgment unless both parties had first complied with section 2105"]; *Woolsey,* at p. 892 ["After a mediation in a marital dissolution case, parties must nonetheless comply with section 2106 prior to entry of judgment by the trial court"].)

---

[4]    Two other exceptions apply in summary dissolution and default cases. Parties to summary dissolution proceedings are exempted from the final declaration of disclosure requirements; however, a preliminary disclosure is required in such proceedings. (Fam. Code, § 2109.) Similarly, in default cases, the petitioner must serve a preliminary declaration of disclosure, but may waive the final declaration of disclosure requirement. (*Id.*, § 2110.)

[5]    Neither Murray nor Gilda claims they stipulated to a waiver of the final declaration of disclosure requirement as provided for in section 2105, subdivision (d).

8

3. *Evidence Code Mediation Confidentiality Provisions*

"[C]onfidentiality is essential to effective mediation . . . and, in some cases required by, the Legislature." (*Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 14 (*Foxgate*).) "[T]he mediation confidentiality provisions of the Evidence Code were enacted to encourage mediation by permitting the parties to frankly exchange views, without fear that disclosures might be used against them in later proceedings." (*Fair v. Bakhtiari* (2006) 40 Cal.4th 189, 194 (*Fair*).)

Mediation confidentiality is codified in Evidence Code section 1115 et seq. As delineated in Evidence Code section 1119, mediation confidentiality applies to any oral or written communication made or "prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation . . . ." (Evid. Code, § 1119.) Section 1119 specifies that such evidence is neither subject to discovery nor admissible in any civil action or other noncriminal proceeding. Even after mediation ends, communications and writings protected by the statutes are to remain confidential. (Evid. Code, § 1126.)

Notwithstanding the statutes' broad scope, the factual contents of a conversation or writing are not automatically deemed confidential simply because they are included in a mediation communication. Under Evidence Code section 1120, subdivision (a), facts that constitute otherwise admissible evidence or are subject to discovery outside of a mediation do not become inadmissible or protected from disclosure solely by reason of their introduction or use in a mediation. Likewise, otherwise admissible facts cannot be shielded from disclosure simply because they have been placed in confidential mediation documents. (*Wimsatt, supra,* 152 Cal.App.4th at p. 161; *Rojas v. Superior Court* (2004) 33 Cal.4th 407, 423, fn. 8 (*Rojas*).)

Some mediation communications are admissible and subject to disclosure under statutorily defined exceptions. For example, the statutory scheme specifies when written and oral settlements resulting from the mediation process are admissible. (Evid. Code, §§ 1118, 1123, 1124.) Additionally, mediation communications or writings may be admitted if there is consent for disclosure in accordance with the conditions set forth in Evidence Code section 1122.

Our Supreme Court has broadly applied the mediation confidentiality statutes and all but categorically prohibited judicially crafted exceptions, even in situations where justice seems to call for a different result. (See *Wimsatt, supra,* 152 Cal.App.4th at p. 152 [cataloguing Supreme Court cases].) "To carry out the purpose of encouraging mediation by ensuring confidentiality, the statutory scheme . . . unqualifiedly bars disclosure of communications [and writings] made during mediation absent an express statutory exception." (*Foxgate, supra,* 26 Cal.4th at p. 15, fn. omitted; accord, *Rojas, supra,* 33 Cal.4th at p. 416; *Fair, supra,* 40 Cal.4th at p. 194.) "Judicial construction, and judicially crafted exceptions, are permitted only where due process is implicated, or where literal construction would produce absurd results, thus clearly violating the Legislature's presumed intent. Otherwise, the mediation confidentiality statutes must be applied in strict accordance with their plain terms. Where competing policy concerns are present, it is for the Legislature to resolve them." (*Cassel, supra,* 51 Cal.4th at p. 124; *Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 582-583 (*Simmons*).)

4. *Evidence Code Section 1119 Does Not Apply to Disclosures Made Pursuant to and For the Purpose of Complying with the Family Code's Statutory Mandate*

As the foregoing authorities make clear, courts must eschew judicially crafted exceptions to mediation confidentiality, unless due process is implicated or a literal construction would produce absurd results. (*Cassel, supra,* 51 Cal.4th at p. 124.) However, manifest as this rule is, it does not answer the threshold question presented by this case—that is, do the mediation confidentiality statutes apply in the first instance to statutorily mandated disclosures that must be made regardless of whether the parties participate in mediation? We conclude the answer to this question is "no."

To reiterate, under Evidence Code section 1119, mediation confidentiality applies to any writing "prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation . . . ." The declarations of disclosure at issue in this case—in particular the final declarations that must be exchanged before judgment can be entered (Fam. Code, § 2106)—do not come within the categories delineated by section 1119.

10

These declarations were not prepared "for the purpose of" a mediation; rather, they were prepared for the purpose of complying with Family Code section 2100 et seq. Nor were the declarations prepared "pursuant to" a mediation; again, they were prepared pursuant to a statutory duty imposed by the Family Code, and a mandate requiring exchange of the final declarations before judgment will be entered. (See Fam. Code, § 2106.) As Gilda aptly puts it in her writ petition, "the disclosure documents are not created and exchanged because a mediation is contemplated and they will form a part of the party's negotiation strategy. Rather, they are created and exchanged because the [L]egislature demands it, so that divorcing spouses will have full and accurate information upon which to base fair and equitable divisions of assets." We agree.

Further, assuming the declarations were in fact exchanged during the mediation—an assertion that Gilda denies—this does not put them into the category of writings prepared "in the course of" mediation. Under Evidence Code section 1120, a writing that is otherwise admissible or subject to discovery outside of a mediation does not "become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation or a mediation consultation." (Evid. Code, § 1120, subd. (a).) Section 1120 limits the scope of Evidence Code section 1119 and thus prevents parties from using mediation as a pretext to shield materials from disclosure. (*Rojas, supra,* 33 Cal.4th at p. 417.) In view of this limitation, "[m]ediation confidentiality is to be applied where the writing or statement would not have existed *but for* a mediation communication, negotiation, or settlement discussion."[6] (*Wimsatt, supra,* 152 Cal.App.4th at p. 160,

---

[6] In *Rojas*, the Supreme Court explained that applying Evidence Code section 1120 "as a 'limit[]' on 'the scope of [s]ection 1119' that 'prevent[s] parties from using a mediation as a pretext to shield materials from disclosure' " is "consistent with the construction of similar language in rule 408 of the Federal Rules of Evidence (28 U.S.C.) . . . ." (*Rojas, supra,* 33 Cal.4th at p. 417 & fn. 5.) As construed by the federal courts, *Rojas* explains, rule 408 " 'prevent[s] one from being able to "immunize from admissibility documents otherwise discoverable merely by offering them in a compromise negotiation." [Citation.] [It] does not [apply] where the document, or statement, would not have existed but for the negotiations, hence the negotiations are not being used as a device to thwart discovery by making existing documents unreachable.' "

11

italics added, citing *Rojas,* at p. 417, fn. 5.)  Here, because exchange of the declarations is mandated by the Family Code, these documents would have existed (and would have been exchanged) even if the parties had never agreed to mediate.  Their introduction at mediation does not obviate the disclosure obligation or shield the declarations from discovery.  (Evid. Code, § 1120, subd. (a).)

This characteristic also distinguishes the declarations of disclosure from true mediation communications that other courts have considered in rejecting judicially crafted exceptions to mediation confidentiality.  Unlike the subject declarations, which were statutorily required regardless of whether the parties participated in mediation, the communications at issue in those cases were plainly prepared for "the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation."  (Evid. Code, § 1119.)  For instance, in *Cassel*, the Supreme Court rejected a judicially crafted exception for "communications between a mediation participant and his or her own attorneys outside the presence of other participants in the mediation" (*Cassel, supra,* 51 Cal.4th at pp. 121-122) where the subject evidence concerned "private attorney-client discussions immediately preceding, and during, the mediation *concerning mediation settlement strategies* and [the attorneys'] efforts to persuade [their client] to reach a settlement *in the mediation.*"  (*Id.* at p. 118, italics added.)  Likewise, in *Rojas*, the Supreme Court rejected the Court of Appeals' application of attorney work product principles to create a "good cause" exception to mediation confidentiality (*Rojas, supra,* 33 Cal.4th at pp. 414, 423) where the subject materials consisted of photographs, written witness statements and expert analyses of physical objects that were prepared for the purpose of mediation.  (*Id.* at pp. 416-417.)  The same holds true of the other Supreme Court cases that have considered nonstatutory exceptions to the mediation confidentiality statutes.  (See, e.g., *Foxgate, supra,* 26 Cal.4th at pp. 17-18 [rejecting exception to allow mediator report about bad faith conduct of a party that recited "statements made during the mediation

---

(*Rojas,* at p. 417, fn. 5, quoting *Ramada Dev. Co. v. Rauch* (5th Cir. 1981) 644 F.2d 1097, 1107.)

session"]; *Simmons, supra,* 44 Cal.4th at pp. 584, 588 [rejecting judicial estoppel exception where challenged evidence concerned an alleged oral contract made during mediation]; see also *Fair, supra,* 40 Cal.4th at pp. 194, 197-198 [affirming exclusion of memorandum and portions of declaration describing purported settlement reached at mediation].)

In *Wimsatt*, this court likewise rejected a proffered nonstatutory exception for mediation communications that might reveal " 'perjury or inconsistent statements' " in a legal malpractice action alleging the defendant attorney submitted an unauthorized settlement demand. (*Wimsatt, supra,* 152 Cal.App.4th at p. 162.) Adhering to the Supreme Court's instruction that exceptions to mediation confidentiality must be expressly stated in the statutes, we concluded the plaintiff was prohibited from soliciting information in discovery concerning the contents of the parties' mediation briefs, even though this might deprive him of crucial evidence supporting his malpractice claim. (*Id.* at pp. 158, 162.) We similarly concluded the plaintiff was prohibited from discovering e-mail communications that referred to the mediation briefs. We reasoned these communications were subject to mediation confidentiality insofar as "[t]he e-mails would not have existed had the mediation briefs not been written." (*Id.* at p. 159.)

In contrast to the foregoing, we held the defendant in *Wimsatt* failed to establish mediation confidentiality attached to a conversation with opposing counsel that took place outside of mediation concerning the plaintiff's settlement demand. (*Wimsatt, supra,* 152 Cal.App.4th at p. 161.) We noted there was evidence indicating the conversation occurred "during a telephone call 'scheduling the expert depos and touching on whether a second mediation conf[erence] would be worthwhile.' " (*Ibid.*) Because this suggested "the conversation may have occurred, and the statement could have been made, even if there was to be no mediation," and the defendant failed to "bring forth facts to show that this conversation was anything other than a routine discussion, unassociated with mediation," we held the evidence was insufficient to establish the communication was made "for the purpose of, in the course of, or pursuant to a mediation." (*Ibid.*) We

13

reach the same conclusion here with respect to the statutorily mandated declarations of disclosure.[7]

Because the Family Code requires it, these declarations would have been prepared and exchanged even if there was no mediation. Accordingly, the declarations were not prepared "for the purpose of, in the course of, or pursuant to, a mediation." (Evid. Code, § 1119, subd. (b).) In so holding, we are not crafting an exception to the mediation confidentiality statutes. On the contrary, we simply recognize that the confidentiality statutes do not apply in the first instance, because these statutorily mandated declarations do not fall within any category delineated by Evidence Code section 1119.[8] (*Wimsatt, supra,* 152 Cal.App.4th at p. 161.)

This conclusion is compelled notwithstanding the statement in the parties' marital settlement agreement that the "Preliminary/Final Declarations of Disclosure shall be

---

[7]    Murray asserts the trial court made a factual finding that the declarations of disclosure were prepared for the purpose of, pursuant to or in the course of mediation, and this factual finding constrains our review of the ruling below. We disagree. To begin, the issue presented is properly viewed as a question of statutory interpretation concerning the scope of Evidence Code section 1119 and the Family Code mandates regarding declarations of disclosure—an issue of law that we review de novo. (*Lockyer, supra,* 122 Cal.App.4th at p. 1071.) Be that as it may, even were we to assume Murray's premise, we would have to conclude no reasonable finder of fact could make the finding he advances. That is, no reasonable fact finder could conclude the final declarations of disclosure "would not have existed *but for* a mediation communication, negotiation, or settlement discussion" (*Wimsatt, supra,* 152 Cal.App.4th at p. 160, italics added) in view of the Family Code's mandate requiring the preparation and exchange of such documents *regardless of whether the parties mediate.*

[8]    To be clear, we are not endorsing the discovery referee's view that the Family Code's policy for full disclosure "overrides" mediation confidentiality. Where such "competing policy concerns are present, it is for the Legislature to resolve them." (*Cassel, supra,* 51 Cal.4th at p. 124.) Thus, the parties' communications regarding their relative finances during mediation will be subject to mediation confidentiality, even in a dissolution proceeding under the Family Code. However, we repeat, the declarations of disclosure at issue in this case do not come within the ambit of Evidence Code section 1119 because they are not prepared for "the purpose of, in the course of, or pursuant to, a mediation"—they are prepared and exchanged to comply with the Family Code's mandate, regardless of whether the parties choose to mediate.

14

inadmissible in a court of law, and otherwise protected from disclosure, pursuant to the provisions of Section 1119(b) of the *California Evidence Code.*" Because Evidence Code section 1119 does not apply to the subject declarations of disclosure, the foregoing must be seen for what it is—an attempt to effect a *contractual* waiver of the Family Code's mandate and to restrict the trial court's authority to receive the declarations of disclosure into evidence on a motion to set aside the judgment. (See Fam. Code, § 2107, subd. (e).) In view of the Family Code's stated public policy to promote "full and accurate disclosure of all assets and liabilities" in dissolution proceedings (Fam. Code, § 2100, subd. (c)), such a stipulation is not permitted.

Civil Code section 3513 states: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." (See also Civ. Code, § 1668.) So it is here. Except as specified in Family Code section 2105, the parties were not permitted to waive the exchange of the final declarations of disclosure, nor could they stipulate to violate the Family Code's statutory pronouncements effectuating public policy. (*In re Marriage of Fell, supra,* 55 Cal.App.4th at p. 1063-1064.) The trial court should have ordered production of the declarations of disclosure as mandated by the Family Code. The failure to do so was an abuse of discretion.

## DISPOSITION

The petition is granted.  Let a writ of mandate issue directing the trial court to vacate its order denying Gilda Lappe's motion to compel and to enter a new and different order granting the motion with respect to the declarations of disclosure.  The stay of proceedings in the trial court is lifted.  Gilda Lappe is awarded her costs in this writ proceeding.


**CERTIFIED FOR PUBLICATION**


KITCHING, J.

We concur:



KLEIN, P. J.



EDMON, J. *

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.