Filed 6/21/16  Marriage of Amankonah and Monson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of THOMAS D. AMANKONAH and PETREA MONSON. | |
| | D068274 |
| THOMAS D. AMANKONAH, | |
| Appellant, | |
| v. | (Super. Ct. No. D541716) |
| PETREA MONSON, | |
| Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Cindy D. Davis, Judge.  Affirmed.

Law Offices of Jenkins and Erik C. Jenkins for Appellant.

Fleischer & Ravreby, Richard R. Ravreby and Tana J. Landau for Respondent.

After a nine-hour mediation with a retired superior court judge, the parties in this marital dissolution case, each represented by separate counsel, reached a written agreement involving custody, support, and property issues (Agreement).  Instead of

exchanging final declarations of disclosure as required by Family Code[1] section 2105, subdivision (a), the Agreement states, "Waive DOD." Later, when disputes arose regarding Thomas Amankonah's performance under the Agreement, his ex-wife, Petrea Monson, successfully brought a motion under Code of Civil Procedure section 664.6 to have the court enter the Agreement as a judgment.

Amankonah appeals from the judgment. He contends (1) under section 2106, judgment cannot be entered because the parties did not exchange statutorily required final declarations of disclosure, and the parties' purported waiver of this requirement by stating "Waive DOD" is invalid; and (2) because the waiver of final declarations of disclosure is invalid, the court lacked jurisdiction to enter judgment. Although Amankonah does not argue he suffered any prejudice from the failure to exchange final declarations of disclosure, he contends no prejudice is necessary because section 2107, subdivision (d) states, "The failure to comply with the disclosure requirements does not constitute harmless error."

We conclude Amankonah is only partially correct. Because the parties sought to enter the Agreement as a judgment, Amankonah is correct that "Waive DOD" is ineffective to waive the mandated exchange of final declarations of disclosure as provided in section 2105, subdivision (d). (*In re Marriage of Fell* (1997) 55 Cal.App.4th 1058, 1065 (*Fell*) [no form of waiver other than as prescribed by section 2105, subdivision (d) is effective]; *In re Marriage of Woolsey* (2013) 220 Cal.App.4th 881,

---

[1] All statutory references are to the Family Code unless otherwise specified.

892-893 (*Woolsey*) [after a mediation in a marital dissolution case, compliance with the declaration of disclosure requirements is a prerequisite to entry of judgment].)

However, these disclosure requirements are not jurisdictional, and the failure to comply cannot lead to reversal unless the appellant establishes prejudice. (*In re Marriage of Steiner & Hosseini* (2004) 117 Cal.App.4th 519, 528 (*Steiner*) [refusing to apply section 2107, subdivision (d) because it is inconsistent with the constitutional mandate that no judgment may be set aside unless there has been a miscarriage of justice].) Because Amankonah makes no attempt to show prejudice resulting from the failure to exchange final declarations of disclosure, the error is harmless and the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Parties*

The parties were married in 2002 and had one child together. In February 2014 the court terminated their marital status.

Amankonah has been a physician for approximately 25 years. His January 2015 income and expense declaration states he was earning approximately $30,000 per month.

Monson is a research coordinator. Her September 2014 income and expense declaration states she was earning $1,600 per month.

B. *Mediation*

In April 2014 the parties meet with the Honorable Thomas R. Murphy (Ret.) to mediate custody, support, and property issues. At that time, Monson had pending a

motion for child and spousal support and for an award of attorney fees. Approximately six months earlier, the parties had exchanged preliminary declarations of disclosure.[2]

Both parties and their respective lawyers were at the mediation. Amankonah was represented by Laura Miller, a certified family law specialist. Monson was represented by Richard Ravreby, also a certified family law specialist.

The mediation lasted nine hours. Amankonah was "actively involved" discussing offers and counteroffers. Amankonah was calm and he was in complete control of his faculties. Miller explained to Amankonah that absent a negotiated resolution, he was exposed to a potentially large support order and attorney fees award.

The mediation resulted in an 11-page settlement agreement (Agreement) handwritten by Judge Murphy. The Agreement resolved, among other issues: child custody, insurance, support, real property, furniture and furnishings, automobiles, retirement accounts, credit card debts, and attorney fees.

Among other provisions, the Agreement states, "The parties waive any Epstein, Watts and or Frick claims they may have against the other."[3] The Agreement also states, "Waive DOD."

---

[2] Section 2104 generally provides the parties in a marital dissolution action must exchange prescribed preliminary declarations of disclosure. Among other things, the preliminary declaration of disclosure must identify "all assets in which the declarant has or may have an interest and all liabilities for which the declarant is or may be liable, regardless of the characterization of the asset or liability as community, quasi-community, or separate." (§ 2104, subd. (c)(1).)

[3] *In re Marriage of Epstein* (1979) 24 Cal.3d 76, superseded by statute on other grounds as stated in *In re Marriage of Margulis* (2011) 198 Cal.App.4th 1252, 1280; *In*

The Agreement states it is "binding and enforceable" and "may be introduced into evidence and/or established as a judgment per [Code of Civil Procedure section] 664.6."

Judge Murphy gave Amankonah a copy of the signed Agreement. Amankonah began to have second thoughts as early as the walk back to his attorney's office.

The Agreement required Amankonah to pay $5,000 per month for spousal and child support. However, Monson testified that Amankonah paid that amount only once and, "[o]ther than that, every month it was less than $5,000." Amankonah also did not pay the $5,000 in attorney fees provided in the Agreement. The Agreement requires Amankonah to convey certain Hawaii property to Monson; however, he refused to sign the deed. As disputes about Amankonah's failure to perform his obligations under the Agreement began to mount, he threatened Monson he would "make [her] pay" and "litigate this until neither of us have any money."

C. *Motion to Enforce Settlement Agreement*

In September 2014 Monson's attorney filed a request for an order enforcing the Agreement under Code of Civil Procedure section 664.6.[4] Opposing the motion, Amankonah filed a declaration asserting the Agreement was unenforceable because he "did not fully comprehend or understand the terms of the agreement" and "[m]any terms

_____

*Re Marriage of Watts* (1985) 171 Cal.App.3d 366; *In re Marriage of Frick* (1986) 181 Cal.App.3d 997.

[4]    Code of Civil Procedure section 664.6 provides in part: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

and provisions were not explained to me." In particular, Amankonah stated, "I did not understand the various property and reimbursement rights, such as Epstein and Watts credits and Family Code section 2640 claims, which I allegedly waived under that agreement."

Amankonah's attorney also filed written opposition.[5] He asserted the Agreement was unenforceable "because [Amankonah] did not comprehend or understand the terms of the agreement." Counsel stated, "There was no meeting of the minds, and a true accord was not reached."

1. *Day one*

The court conducted an evidentiary hearing. Before the first witness was sworn, Amankonah's attorney explained that Amankonah no longer claimed the entire agreement was unenforceable. Instead, he was only contending the provisions waiving *Epstein* credits and section 2640 credits were not explained to Amankonah and were therefore not binding.[6] Counsel stated, "He [Amankonah] would stipulate, and if we want to put a stipulation on the record as to the rest of this agreement, Your Honor, there is no issue

_____

[5]     Amankonah was now represented by attorney Eric C. Jenkins, not Laura Miller.

[6]     In *Epstein, supra,* 24 Cal.3d 76, the California Supreme Court recognized a spouse's right to reimbursement from community property for payment of post-separation community expenses from the spouse's separate funds.
    Section 2640, subdivision (b) provides in part: "In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source."

6

because most of it is in plain English. And he's a very educated man. He's a doctor. He speaks several languages."

After opening statements, Miller testified she reviewed the entire Agreement with Amankonah and answered all his questions.[7] She discussed with him issues of child support and how a child support order is calculated. She talked to Amankonah about the property he would receive. She reviewed "in detail" with Amankonah "every single paragraph of this settlement agreement before he signed it."

Miller answered every question Amankonah asked regarding the settlement terms. She discussed with Amankonah "what an Epstein claim was" and "what a waiver of Epstein claims meant." Amankonah understood her explanation. Miller also told Amankonah "what a Watts claim was" and he understood what the Agreement "meant by waiving a Watts claim." Amankonah asked Miller questions about "what a Marriage of Frick claim was" and she "fully explained to him what these types of waivers involving a Frick claim were." She also discussed with Amankonah "what a Family Code [section] 2640 claim entailed." Amankonah "understood what a Family Code [section] 2640 waiver was." Miller testified she explained reimbursement claims to Amankonah "in detail."

Miller also explained what the Agreement meant by "Waive DOD." Amankonah asked her about the purpose of exchanging final declarations of disclosure, and "if there would be any harm to him waiving final DODs." Miller explained to him "the purpose of

---

7    Amankonah waived the attorney-client privilege before Miller testified.

final DODs, and [she] indicated to him that it was [her] opinion there was no harm in waiving the final DODs."  Amankonah agreed with this decision.

Amankonah initialed each page of the Agreement and signed the last page.  Miller testified there is "no doubt" that Amankonah "knowingly and willingly signed the [settlement] [A]greement."

Amankonah's testimony, however, was significantly different from Miller's.  He testified Miller did not explain *Epstein* waivers or any reimbursement waivers.  He did not "recall" whether Miller explained the waiver of final declarations of disclosure.  Amankonah testified Miller simply told him what to do, and he relied on her advice.  Amankonah also testified he did not "recall" telling Monson he would keep litigating until "there's no more money left."

The parties were unable to complete the hearing in the half-day allotted.  The court continued the matter for 30 days.

2.  *Day two*

Section 2105, subdivision (d) provides that a waiver of final declarations of disclosure "shall include" five enumerated representations.  To quote just one of the five here by way of example, the parties must represent they both "have fully augmented the preliminary declarations of disclosure, including disclosure of all material facts and information regarding the characterization of all assets and liabilities, the valuation of all assets that are contended to be community property or in which it is contended the community has an interest, and the amounts of all obligations that are contended to be

8

community obligations or for which it is contended the community has liability."

(§ 2105, subd. (d)(3).)[8]

When the Code of Civil Procedure section 664.6 hearing resumed approximately 30 days later, it quickly became obvious that during the break, Amankonah's attorney had developed a theory under section 2105, subdivision (d) to oppose enforcement of the Agreement. With no advance notice to opposing counsel or the court, Amankonah's attorney began asking questions about the Agreement's "Waive DOD" provision. Amankonah testified the Agreement did not contain *any* of the five representations set forth in section 2105, subdivision (d):

> "Q: . . . Do you see anything in this document that says that both the parties, you and Ms. Monson, have complied with section 2104 and the preliminary declarations of disclosure that have been completed and exchanged?
>
> "A: No, I don't.
>
> "Q: . . . Do you see anything in this document that says that both parties have completed and exchanged a current income and expense declaration that includes all material facts and information regarding that party's earning accumulations and expenses?
>
> "A: I don't see it. No.
>
> "Q: Do you see anything in this document that says that both parties . . . have fully augmented the preliminary declaration of disclosures, including disclosure of all materials [*sic*], facts and information regarding the characterization of all assets . . . ."
>
> "A: No, I don't."

---

8    For a complete list of the five representations that "shall" be made to constitute a valid waiver under section 2105, subdivision (d), see *post*, part II (B)(2).

9

Immediately after eliciting this testimony, Amankonah's attorney made an oral "motion to dismiss the [Code of Civil Procedure section] 664.6 motion for lack of jurisdiction" because "[t]he language in section 2105 of the Family Code is mandatory" and none of those "conditions that we have just gone through are met."

Monson's attorney responded by stating he was "astounded" and the motion to dismiss was "disingenuous."

The court asked Amankonah's attorney for "case authority[] for the proposition that a . . . handwritten agreement signed by both parties where both parties are represented by counsel is not enforceable . . . because every single word under the requirements of [section] 2105 are not in the face of the [document]"? Amankonah's lawyer stated he had no such authority, but "[t]he statute is clear" and "[y]ou don't need case law."

Monson's attorney replied "[t]here is nothing in the responsive papers as to this issue. There is [*sic*] no points and authorities on it. [¶] . . . [¶] [T]hey never raised the issue until just now . . . . [¶] . . . [¶] And it's disturbing to me that suddenly we're doing that. I could have done some research on it."

The court expressed similar dismay at the manner in which Amankonah's lawyer made this argument with no advance notice, stating, "I don't have any points and authorities. I don't have much to work with here."

Nevertheless, Monson's attorney insisted on completing the hearing, stating, "I want to finish this today." The court obliged, stating, "We are going to work our way through this today."

10

The court denied Amankonah's motion to dismiss. The court found "everything was explained to [Amankonah] regarding the waiver of final DODs. And . . . he knowingly and intelligently waived them, based on the testimony, the compelling testimony of Ms. Miller."

3. *Statement of decision*

After closing arguments, the court announced an oral statement of decision, stating in part:

> "[T]his handwritten document, which is 11 pages in length, is initialed on each page by the parties. And also signed by the parties and their attorneys on the last page. This document was a result of nine hours of negotiations between the parties with the assistance of Judge Murphy.
>
> "The court did listen to the testimony of Dr. Amankonah and Ms. Monson. And I do have voluminous notes of that testimony. And as I previously noted, I do find . . . the testimony of Ms. Miller to be compelling, and I did find Ms. Miller to be a credible witness.
>
> "She [Miller] testified that the case was basically resolved in its entirety as a result of the agreement, that she reviewed all provisions and answered all questions of [Amankonah] throughout the process, and that she reviewed in detail every paragraph and answered all the questions, and had no doubt that [Amankonah] understood the terms of the agreement.
>
> "She testified that the [section] 2640 credits were definitely part of the settlement and that she actually did explain the waiver of the DODs and [Amankonah] actually asked the question, what the purpose of the final DODs were, and would there be any harm by him waiving them. And then he agreed and understood that he was waiving the final DODs.
>
> "She [Miller] has no doubt that he [Amankonah] knowingly and willingly signed the agreement. . . . [¶] . . .

11

" . . . I found portions of Dr. Amankonah's testimony to not be credible. . . . [¶] . . .

" . . . I do not find that Dr. Amankonah's positions, pursuant to [section] 664.6, [are] well taken.

"I do find that the agreement was voluntarily entered and knowingly entered. And that, again, I found the testimony of Ms. Miller to be very credible, and very, very compelling. [¶] . . .

"And then at page 10, that the agreement may be introduced or established as a Judgment pursuant to [Code of Civil Procedure section] 664.6 at page 10. I think it's all there. I think this is an enforceable agreement. This court will enforce it as a judgment."

After the hearing, the court entered written findings consistent with the oral statement of decision and ordered that the Agreement "shall be entered as a Judgment of the court pursuant to [Code of Civil Procedure section] 664.6." On April 17, 2015, the court entered judgment. This appeal timely followed.

DISCUSSION

I. *THE STANDARD OF REVIEW*

"The trial court's factual findings on a motion to enforce a settlement under [Code of Civil Procedure,] section 664.6 'are subject to limited appellate review and will not be disturbed if supported by substantial evidence.' [Citation.] In instances involving questions of law, including the construction and application of the statute, the trial court's decision is not entitled to deference and will be subject to independent review." (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1253.)

## II. *AMANKONAH WAS NOT PREJUDICED BY THE FAILURE TO EXCHANGE FINAL DECLARATIONS OF DISCLOSURE*

A. *Family Code Disclosure Requirements*

"Sound public policy favors the reduction of the adversarial nature of marital dissolution by fostering full disclosure and cooperative discovery." (*In re Marriage of Jones* (1998) 60 Cal.App.4th 685, 693.) To this end, the Family Code provides that "'parties to marital dissolution proceedings have an affirmative duty to exchange both a preliminary and a final declaration of disclosure, detailing all of their assets and liabilities, prior to judgment being entered.'" (*Woolsey*, *supra*, 220 Cal.App.4th at p. 890.) "The preliminary declaration of disclosure provides a general inventory of the parties' respective assets at the outset of dissolution proceedings. The final declaration requires far more extensive disclosures." (*Lappe v. Superior Court* (2014) 232 Cal.App.4th 774, 780 (*Lappe*), fn. omitted.)

Here, it is undisputed the parties exchanged preliminary declarations of disclosure in November 2013, approximately six months before the mediation. The issue in this case involves the parties' attempted waiver of the statutory duty to exchange final declarations of disclosure.

Section 2105, subdivision (a) requires final financial disclosures by providing in part that, "[e]xcept by court order for good cause, before or at the time the parties enter into an agreement for the resolution of property or support issues other than pendente lite support, or, if the case goes to trial, no later than 45 days before the first assigned trial date, each party, or the attorney for the party in this matter, shall serve on the other party

13

a final declaration of disclosure and a current income and expense declaration, executed under penalty of perjury on a form prescribed by the Judicial Council, unless the parties mutually waive the final declaration of disclosure."

The Family Code mandates that the final declaration of disclosure "shall include" "[a]ll material facts and information" regarding (1) "the characterization of all assets and liabilities," (2) "the valuation of all assets that are contended to be community property or in which it is contended the community has an interest," (3) "the amounts of all obligations that are contended to be community obligations or in which it is contended the community has liability," and (4) "the earnings, accumulations, and expenses of each party that have been set forth in the income and expense declaration." (§ 2105, subd. (b).)

Subject to a few narrow statutory exemptions, discussed *post*, "[a] judgment entered when the parties have failed to comply with the declaration of disclosure requirements is subject to set aside to the extent the nondisclosure materially affected the judgment." (*Lappe*, *supra*, 232 Cal.App.4th at p. 781; §§ 2105, subd. (c), 2106, 2107, subd. (d).)[9]

---

[9]    Section 2105, subdivision (c) provides: "In making an order setting aside a judgment for failure to comply with this section, the court may limit the set aside to those portions of the judgment materially affected by the nondisclosure."
    Section 2106 provides in part: "Except as provided in subdivision (d) of Section 2105, Section 2110, or absent good cause as provided in Section 2107, no judgment shall be entered with respect to the parties' property rights without each party, or the attorney for that party in this matter, having executed and served a copy of the final declaration of disclosure and current income and expense declaration."

14

B.  *Exceptions to Exchange of Final Declarations of Disclosure*

1.  *Good cause*

"The mandatory declaration of disclosure requirements are subject to a few narrow statutory exemptions."  (*Lappe*, *supra*, 232 Cal.App.4th at p. 781.)  Under section 2105, subdivision (a), the court has discretion to excuse a party from serving a final declaration of disclosure upon a showing of "good cause."  A well-recognized family law treatise states, "There is no statutory attempt to define what would amount to 'good cause.' Apparently, the intent is to leave the decision in the court's sound discretion to accommodate extraordinary circumstances that might otherwise unfairly impede entry of judgment."  (Hogoboom & King, Cal. Practice Guide:  Family Law (The Rutter Group 2015) ¶ 11:77.1, p. 11-20.)

2.  *Waiver*

Section 2105, subdivision (d) states that on specified conditions, the parties may waive exchanging final declarations of disclosure:

> "(d) The parties may stipulate to a mutual waiver of the requirements of subdivision (a) concerning the final declaration of disclosure, by execution of a waiver under penalty of perjury entered into in open court or by separate stipulation. The waiver shall include all of the following representations:
>
> "(1) Both parties have complied with Section 2104 and the preliminary declarations of disclosure have been completed and exchanged.

---

Section 2107, subdivision (d) provides in part:  "Except as otherwise provided in this subdivision, if a court enters a judgment when the parties have failed to comply with all disclosure requirements of this chapter, the court shall set aside the judgment. The failure to comply with the disclosure requirements does not constitute harmless error."

15

"(2) Both parties have completed and exchanged a current income and expense declaration, that includes all material facts and information regarding that party's earnings, accumulations, and expenses.

"(3) Both parties have fully complied with Section 2102 and have fully augmented the preliminary declarations of disclosure, including disclosure of all material facts and information regarding the characterization of all assets and liabilities, the valuation of all assets that are contended to be community property or in which it is contended the community has an interest, and the amounts of all obligations that are contended to be community obligations or for which it is contended the community has liability.

"(4) The waiver is knowingly, intelligently, and voluntarily entered into by each of the parties.

"(5) Each party understands that this waiver does not limit the legal disclosure obligations of the parties, but rather is a statement under penalty of perjury that those obligations have been fulfilled. Each party further understands that noncompliance with those obligations will result in the court setting aside the judgment."

3. *Alternative Dispute Resolution Exception*

"[P]arties to a marital dissolution action may opt out of litigation by agreeing to an alternative dispute resolution mechanism that does not involve all of the formalities required of an adversarial system of justice." (*Woolsey, supra,* 220 Cal.App.4th at p. 892.) Private mediation often offers a speedy and less expensive approach to resolving issues arising from marital dissolution. "Requiring technical compliance with disclosure rules designed for adversarial litigation would undermine the strong public policy of allowing parties to choose speedy and less costly avenues for resolving their disputes. Parties who agree to settle their dispute by private mediation may also agree to make financial disclosures that do not meet the technical procedural requirements of sections

16

2104 and 2105. Thus, strict compliance with sections 2104 and 2105 is not required for private mediations that address issues arising out of a marital dissolution." (*Ibid.*)

However, this exception is limited. Under *Woolsey,* the parties can agree that the failure to comply with disclosure obligations under section 2105 will not affect the validity of a settlement agreement reached in mediation. (*Woolsey, supra,* 220 Cal.App.4th at p. 892.)

However, section 2106 provides that "no judgment shall be entered with respect to the parties' property rights without each party, or the attorney for that party in this matter, having executed and served a copy of the final declaration of disclosure and current income and expense declaration." Thus, once a party seeks to convert a mediated settlement agreement *into a judgment*, normal statutory procedures applicable to trials are triggered. Therefore, compliance with the declaration of disclosure requirements is a prerequisite to entry of judgment confirming an arbitration award or a mediated agreement settling the parties' property and/or support rights. (*Elden v. Superior Court* (1997) 53 Cal.App.4th 1497, 1509-1510 (*Elden*); *Lappe, supra*, 232 Cal.App.4th at p. 782; *Woolsey*, *supra*, 220 Cal.App.4th at pp. 892-893.)

For example, in *Elden*, *supra,* 53 Cal.App.4th 1497, a couple agreed to arbitrate the dissolution of their marriage. They failed to disclose their assets and liabilities either at the outset or at the time of the award. The appellate court held the failure to disclose was not fatal to the arbitration award, stating: "Although we recognize the public policy reasons for the disclosure sections set forth within the Family Code, we conclude that the parties to a dissolution who have agreed to engage in private arbitration of their property

17

issues are entitled to adopt other, more summary procedures for financial disclosure. . . . If parties to a marital dissolution enter an agreement to settle their property or support issues by private or nonjudicial arbitration, they may do so without complying with section 2104 or section 2105. Thus, Husband and Wife here could arbitrate to an award whether or not they had filed either preliminary declarations or final declarations." (*Id*. at pp. 1508-1509.)

Nevertheless, the *Elden* court held that disclosure may be delayed, but not necessarily avoided. Regardless of the procedures adopted in arbitration or mediation, the parties are nonetheless required to execute and serve final declarations of disclosure before the court may enter judgment, unless the court finds good cause to excuse final declarations of disclosure or the parties validly waive such disclosures:

> "Section 2106 provides that 'no judgment shall be entered with respect to the parties' property rights' where either of the parties fails to serve final declarations. We therefore hold that a trial court is precluded from entering any judgment, including one confirming an arbitration award settling marital property rights, until (1) the court finds good cause to find that no final declarations are necessary or (2) the parties have complied with section 2106. The only exception is that provided in section 2105, subdivision (c), of a written waiver or a formal stipulation." (*Elden, supra,* 53 Cal.App.4th at p. 1509.)

C. *Analysis*

The parties did not exchange final declarations of disclosure and the court did not make a finding of good cause to excuse such nondisclosure. Therefore, under section 2106, the court was precluded from entering judgment unless the parties validly waived exchanging final declarations of disclosure.

18

Under section 2105, subdivision (d), to constitute a valid waiver, the parties' stipulation or agreement to waive final declarations of disclosure must contain the following five representations: (1) "the preliminary declarations of disclosure have been completed and exchanged"; (2) "[b]oth parties have completed and exchanged a current income and expense declaration"; (3) "[b]oth parties . . . have fully augmented the preliminary declarations of disclosure, including disclosure of all material facts and information regarding the characterization of all assets and liabilities, the valuation of all assets that are contended to be community property or in which it is contended the community has an interest, and the amounts of all obligations that are contended to be community obligations or for which it is contended the community has liability"; (4) "[t]he waiver is knowingly, intelligently, and voluntarily entered into"; and (5) "[e]ach party understands that this waiver does not limit the legal disclosure obligations of the parties, but rather is a statement under penalty of perjury that those obligations have been fulfilled. Each party further understands that noncompliance with those obligations will result in the court setting aside the judgment." (§ 2105, subd. (d).)

The parties' Agreement in this case contains none of these representations. Rather, it simply says, "Waive DOD." The attempted waiver in the Agreement is plainly insufficient under section 2105, subdivision (d).

Nevertheless, Monson contends the court properly determined waiver because (1) the Agreement states "Waive DOD," (2) Amankonah testified he reviewed the entire agreement, (3) he signed voluntarily, (4) Miller explained to Amankonah the purpose of waiving final disclosures and recommended he waive disclosure, (5) Amankonah agreed

19

to waive disclosures, (6) Amankonah understood the significance of waiving final disclosures, and (7) the trial court expressly found Miller's testimony on these matters to be credible.

Monson's argument is precluded by section 2106, subdivision (d), which states waiver of final declarations of disclosure "shall include all" five of the statutorily enumerated representations. As the court explained in *Fell, supra,* 55 Cal.App.4th at page 1065, "Where the Legislature permits a particular, limited waiver of a right upon satisfaction of a set of conditions, it intends that no other related waivers be permitted." More recently, in 2014 the Court of Appeal in *Lappe* reached the same conclusion, stating, "Unless the mandatory conditions specified in section 2105 are met, no purported waiver is effective to excuse exchange of the prescribed final declarations." (*Lappe, supra,* 232 Cal.App.4th at pp. 781-782.) In sum, "No form of stipulated waiver other than as prescribed by [section] 2105 [subdivision] (d) will be effective to excuse exchange of prescribed final declarations." (Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, at ¶ 11:81.1a, p. 11-23, italics omitted.)

Monson also argues the court's findings that Miller fully explained "Waive DOD" and its ramifications to Amankonah, who knowingly agreed to the waiver, constitutes an implicit finding of good cause to dispense with the disclosure requirement under section 2105, subdivision (a). However, although these findings are consistent with and would support a finding of good cause—if one had been made—the court made no finding of good cause. Rather, the court's ruling was based only on waiver. We cannot determine, *as a matter of law* on this record, that good cause exists to excuse exchanging final

20

declarations of disclosure when the trial court made no such finding. (See *Elden*, *supra*, 53 Cal.App.4th at p. 1504, fn. 6 [refusing to imply a finding of good cause as a matter of law].)[10]

Section 2106 provides that absent good cause to excuse exchange of final declarations of disclosure, or valid waiver, "no judgment shall be entered with respect to the parties' property rights without each party, or the attorney for that party in this matter, having executed and served a copy of the final declaration of disclosure and current income and expense declaration." Accordingly, here the court erred in entering the Agreement as a judgment because the court did not make the requisite finding of good cause, and the parties' attempted waiver was invalid because it did not contain the

---

[10] On the first day of the hearing, Amankonah's lawyer offered to "put a stipulation on the record" that there was "no issue" regarding any provisions in the agreement other than *Epstein* and section 2640 credits. However, 30 days later, when the hearing resumed, counsel changed theories without advance notice and asserted judgment could not be entered on any provision in the Agreement because the attempted waiver of final declarations of disclosure was statutorily invalid. In preparing for hearings such as this one, opposing parties and judges rely on the representations that the parties' counsel make as to what issues and theories they will and will not pursue. This does not mean a party is forever after bound by whatever pretrial positions its counsel might take. Things may not proceed according to plan: new evidence comes to light, witnesses give unexpected testimony, mistakes become apparent, strategies change.

But given Amankonah's counsel's prior assertions that he was contesting only the provisions regarding section 2640 and *Epstein* credits, he should have disclosed his change of theory to the court and opposing counsel. Instead, he sprang the argument in an oral motion to dismiss when there was no time for Monson's lawyer and the trial court to prepare to respond. That tactic alone may be responsible for the trial court not making a finding of "good cause" under section 2105, subdivision (a)—not because of an absence of good cause—but because neither the court nor counsel had a meaningful opportunity to research the relevant authorities.

21

mandatory representations required by section 2105, subdivision (d). The judgment would have to be reversed unless the error is harmless.

Amankonah makes two related arguments concerning harmless error. First, he contends the absence of a valid waiver under section 2105, subdivision (d) deprives the trial court of "jurisdiction" to enter judgment in this case, making any harmless error analysis simply irrelevant. Second, he contends the judgment must be reversed, even in the absence of any prejudice from the lack of financial disclosure, because section 2107, subdivision (d) provides in part, "The failure to comply with the disclosure requirements does not constitute harmless error." Neither of these arguments has merit.

Amankonah cites no case holding that the obligation to exchange final declarations of disclosure is jurisdictional. Moreover, existing case law states the disclosure requirement in section 2105 is not jurisdictional. "Although compliance with sections 2104 and 2105 is mandatory, failure to comply is not necessarily fatal." (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 336 [rejecting argument that compliance with preliminary declaration of disclosure is jurisdictional].) More recently, in *Steiner*, *supra,* 117 Cal.App.4th at pages 522, 524, the court held the failure to exchange final declarations of disclosure under section 2105 did not give either party an automatic right to a new trial or reversal without a showing of prejudice; i.e., a miscarriage of justice. Implicit in *Steiner's* holding requiring a showing of prejudice is that the disclosure requirement is not jurisdictional.

*Steiner* also refutes Amankonah's assertion that section 2107, subdivision (d) precludes a harmless error analysis. In *Steiner, supra,* 117 Cal.App.4th at pages 526-527,

22

Division Three of this court held that notwithstanding section 2107, subdivision (d), in the absence of some reasonably specific articulated showing of a miscarriage of justice, failure to comply with the disclosure requirements is not reversible error. The court concluded that section 2107, subdivision (d) was inconsistent with the "constitutional mandate embodied in article VI, section 13 of our state Constitution that no judgment may be set aside or new trial granted unless there has been a miscarriage of justice.'" (*Steiner,* at p. 526.) Thus, the *Steiner* court held nondisclosure is a basis for vacating a judgment only if the moving party shows he or she was prejudiced by the nondisclosure. (*Id.* at p. 528.) Noting the appellant in *Steiner* had not shown how she was prejudiced by the failure to exchange final disclosure statements, the court there concluded the nondisclosure alone was not a basis for reversal.[11] (*Ibid.*)

"The burden is on the appellant in every case to show that the claimed error is prejudicial; i.e., that it has resulted in a miscarriage of justice." (*Cucinella v. Weston Biscuit Co.* (1954) 42 Cal.2d 71, 82.) Prejudice is not presumed and must appear affirmatively upon an examination of the entire record. "[T]he appellant bears the duty of

---

[11]    In *Steiner*, the court was also concerned about reversing a judgment under circumstances that would allow a party to deliberately not comply with disclosure or waiver requirements, keep silent, see if the trial results in an acceptable judgment, and then have the opportunity to obtain a better result "by pulling the non-disclosure card out of his or her sleeve on appeal . . . .  That is the sort of absurdity of statutory result that courts simply do not countenance." (*Steiner, supra,* 117 Cal.App.4th at p. 528.)  Similar concerns are present here because Amankonah did not serve his own final declaration of disclosure, consented to waiving the exchange of final declarations of disclosure, and initially challenged only portions of the Agreement dealing with section 2640 and Epstein credits.  Only when that strategy failed (when the court believed Miller's testimony) did he contend the court was precluded from entering judgment because the waiver failed to comply with section 2105, subdivision (d).

spelling out in his brief exactly how the error caused a miscarriage of justice." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)  "Where any error is relied on for a reversal it is not sufficient for appellant to point to the error and rest there. . . .  The fact of prejudice is just as essential as the fact of error." (*Santina v. General Petroleum Corp.* (1940) 41 Cal.App.2d 74, 77.)

Amankonah has failed to show how he was prejudiced from the entry of judgment in violation of section 2106.  He has not attempted to identify any part of the judgment where he has suffered loss because of the failure to exchange of final disclosure declarations.  There is nothing in the record indicating that Monson undervalued the marital assets or failed to disclose any material fact that would have been included in her final declaration of disclosure.  Moreover, Amankonah's opening brief contains no such assertion or any claim he suffered any distinct or specific prejudice from the lack of final disclosure.  Although Monson's respondent's brief contains six pages under the topic heading, "Any Error by the Trial Court was Harmless Error Because Appellant Failed to Show Prejudice," Amankonah elected to not file a reply brief.  Because Amankonah has not met his burden of showing a miscarriage of justice or prejudice, the parties' failure to exchange disclosure declarations, and failure to validly waive such requirement, is harmless error and does not support reversal of the judgment in this case.  (*Steiner, supra,* 117 Cal.App.4th at p. 522 [failure to comply with disclosure statutes "does not constitute

24

a 'get-a-new-trial-free' card, giving" a party an automatic reversal "where there is no showing of a miscarriage of justice"].)[12]

DISPOSITION

The judgment is affirmed.  Petrea Monson to recover costs on appeal.

NARES, Acting P. J.

WE CONCUR:

O'ROURKE, J.

PRAGER, J.[*]

---

[12]    Because the judgment must be affirmed on this basis, it is unnecessary to consider Monson's argument that Amankonah's appeal should be dismissed under the disentitlement doctrine.

[*]    Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.